Nelson McCormick et al., Respondents, *v.* Patrick Horan, Appellant.

The right of an owner of lands through which a water-course runs, to have the same kept open and to discharge therein surface water which naturally flows thereto, is not limited to the drainage and discharge of such water into the stream in the precise manner it was discharged when the land was in a state of nature. He may change and control the natural flow of the surface water on his lands, and by ditches or otherwise accelerate the flow, or increase the volume of water which reaches the stream, and if he does this in the reasonable use of his lands and does not discharge the water into the stream in quantities beyond its natural capacity, he incurs no liability to a proprietor below him.

Plaintiffs opened a quarry on their lands, the excavation forming a reservoir into which the surface water from the contiguous lands collected. In the spring, when plaintiffs commenced work, they pumped this water, together with that coming from the melting snows and from small water-courses cut off by the excavation, into a water-course which flowed from their lands across defendant's land below. This water, if the excavation had not been made, would have naturally flowed into the stream and although the flow of water was greater when pumping than it otherwise would have been, the natural capacity of the water-course was sufficient to carry off the water so discharged together with the other waters running in the stream. Defendant filled up the channel of the stream and erected a dam across it upon his premises, thus throwing back the water on to plaintiff's land. *Held*, that an action was maintainable to compel defendant to remove such obstructions and to restrain him from interfering with the flow of water in the stream.

(Argued March 8, 1880; decided June 1, 1880.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendant from obstructing the flow of water in a water-course running from the lands of plaintiffs on to and across the lands of defendant below, and to compel him to remove obstructions placed by him in the stream

The facts found were substantially these; Plaintiffs operated a quarry upon their lands near said water-course, which started from a spring upon plaintiffs' lands. After the lands were cleared up over which the stream passed, and many years prior to the acts complained of, the owners, in order to direct and control the flow of the water in the stream, dug ditches and confined the flow therein; plaintiffs dug such a ditch on their lands following the general course of the natural stream to the boundary line of their lands and those of defendant adjoining. This ditch was continued by the then owner of defendant's premises across the same. This ditch was from time to time changed and improved, and when defendant went into possession the ditch across his lands was walled up and covered over. The ditch was capable of holding all the water that ran in the stream except in cases of high water. Plaintiffs worked their quarry during the summer season, and had at the time of the occurrence in question excavated above three-fourths of an acre to a depth of from five to twelve feet. Small watercourses were cut in the progress of the excavation, the water therefrom ran into the bed of the quarry; in the winter the snows drifted into the quarry and melted; in the spring the surface waters from the surrounding lands also flowed into it. The waters so accumulating in said quarry, if it had not been excavated, would naturally descend and flow into said water-course. In the spring of each year plaintiffs pumped the water from the quarry into said water-course. The court found that the flow of water while the pumps are at work is increased in amount, but that the flow is no greater than in the earlier spring months, and that the capacity of the water-course as it runs in said ditch is ample to carry off all the water pumped therein at any time, together with the other water running therein. In May, 1876, and before plaintiffs had begun to

pump the water from their quarry, defendant took up the stone covering of the ditch upon his land, filled it with earth and stone so as to prevent the flow of water therein and built a dam across said water-course near the line between his and plaintiffs' land, which prevented the flow of any water therein until the water had risen to the top of said dam, thereby causing the water to set back into and to fill up plaintiffs' quarry and to overflow their adjoining lands.

*W. F. Cogswell* for appellant. Plaintiffs had no right to discharge the water from their quarry, in the unnatural manner and unusual volume adopted by them, upon the defendant's land. (1 Domat [Cushing's ed.], § 1583, p. 616; *Bellows* v. *Sackett*, 15 Barb. 96; *Bellinger* v. *New York Cent. Railroad*, 23 N. Y. 42; *Clinton* v. *Myers*, 46 id. 511; *Merritt* v. *Parker*, 1 Coxe [N. J.], 460; *Tillotson* v. *Smith*, 32 N. H. 90; Washburn on Easements, 262, § 17; *Mayor, etc., of Baltimore* v. *Appold*, 42 Md. 442; *Pettigrew* v. *Evansville*, 25 Wis. 223; *Baird* v. *Williamson*, 15 J. Scott [N. S.], 391 [15 C. B.]; 109 Eng. Com. L. 391; *Smith* v. *Kendrick*, 7 G. & S. 515; 62 Eng. Com. L.; *Clinton* v. *Myers*, 46 N. Y. 511.) As its continuance for a sufficient length of time would ripen into a right by prescription, defendant had the right to prevent it by legal proceedings, or by resorting to any device, or the erection of any structure which would stop the same, and which he could construct and maintain without a breach of the peace. (*Merritt* v. *Parker*, 1 Coxe [N. J.], 460; *Tillotson* v. *Smith*, 32 N. H. 90; *Corning* v. *Troy Iron and Nail Factory*, 40 N. Y. 191.)

*S. E. Filkins* for respondents. The channel, or waterway, from the spring on plaintiffs' land, across defendant's land, and thence northward, was a legal water-course. (*Shields* v. *Arndt*, 3 Green's Ch. [N. J.] 246, 247; Washburn on E. & Serv. [3d ed.] 279; 39 Conn. 180; Ang. on Wat., § 206, etc. [6th ed.]; *White* v. *Chapin*, 12 Allen, 516.) A superior proprietor may increase or change at intervals the flow of water in a water-course, although damage result to an inferior

proprietor. ( *Waffle* v. *Porter,* 61 Barb. 130 ; *Waffle* v. *N. Y. C. R. R.,* 58 Barb. 413 ; 53 N. Y. 11 ; *Pollett* v. *Long,* 58 Barb. 21 ;. *Williams* v. *Gale,* 3 H. & J. 231 ; Ang. on Wat., § 108, j. [6th ed.] ; *Buffam* v. *Harris,* 5 R. I. 243 ; 21 Barb. 230 ; 6 Ohio St. 188 ; 9 id. 503 ; 12 id. 392 ; 2 Kent's Com. 439, n. ; Wash. on Eas. [3d ed.] 296, 372 ; old ed., 219, 282 ; 17 Barb. 654 ; *Hayes* v. *Waldron,* 44 N. H. 580 ; 29 Wis. 254 ; 2 Exch. 9 ; *Broadbent* v. *Ramsbotham,* 11 Exch. 602 ; Ang. on Wat. [6th ed.], § 108 ; Wash. on E. & S. [3d ed.] 280 ; *Swett* v. *Cutts,* 50 N. H. 439 ; *Buffam* v. *Harris,* 5 R. I. 243, 253.) Plaintiffs were properly allowed a mandatory injunction compelling the defendants to remove the obstruction. (40 N. Y. 191 ; 4 Lans. 47 ; Angell on Water-courses, § 456.)

Andrews, J. Water-courses are the means which nature has provided for the drainage of the country through which they pass, and from the natural servitude of lands upon a water-course to receive the waters flowing therein from the lands above springs the right of the owner of the superior heritage to have the water from his lands, of which the water-course is the natural outlet, drained into and carried off thereby, and the duty of the owner of the inferior and servient tenement not to interfere with or obstruct its passage. But the right to the use of a water-course for the discharge of surface or other waters exists only in respect of waters of which the water-course is the natural outlet, and it does not justify the diversion and turning of the water of one stream into another, not its natural channel, thereby subjecting lands on the stream into which the diversion is made to the servitude or easement of a water-way for the water thus discharged into it. This is the principle upon which several of the cases to which the appellant refers were decided, and they have no application to the case before us. (*Merritt* v. *Parker,* 1 N. J. 460 ; *Tillotson* v. *Smith,* 32 N. H. 90 ; *Mayor, etc., of Baltimore* v. *Appold,* 42 Md. 442.)

The right of an owner of lands, through which a water-course runs, to have the same kept open, and to discharge therein the surface water, which naturally flows thereto, is not however

limited to the drainage and discharge of surface water into the
stream in the same precise manner as when the land was in a
state of nature, and unchanged by cultivation or improvements.
The owner of lands drained by a water-course, may change
and control the natural flow of the surface water therein, and
by ditches or otherwise accelerate the flow, or increase the
volume of water which reaches the stream, and if he does this
in the reasonable use of his own premises, he exercises only a
legal right, and incurs no liability to a lower proprietor.
(*Waffle* v. *N. Y. C. R. R. Co.*, 53 N. Y. 11; *Miller* v. *Lau-
bach*, 47 Pa. St. 154.)   This right is subject to the qualification
that one owner cannot, by artificial arrangements on his land,
concentrate and discharge into the stream surface water, in
quantities beyond the natural capacity of the stream to the dam-
age of other owners. (*Noonan* v. *City of Albany*, 79 N. Y. 470.)
The interests of society are promoted by the cultivation and
improvement of the soil, the working of mines, and by other
industries connected with the use of land, and the rule of law
does not prevent the use of water-courses for artificial drainage,
although the volume of the stream is thereby somewhat en-
larged, and the water is discharged at a different time or man-
ner from what it would be if the land was kept in a state of
nature, provided no material injury is occasioned to other ri-
parian owners.   These views are decisive of this case.   The
plaintiffs in opening the quarry on their premises, were
exercising a lawful right.   The excavation made formed a
reservoir into which the surface water from the contiguous
lands collected, and in the spring, when the plaintiffs com-
menced their operations, they pumped this water, together with
that arising from the melting snows, and what came from the
small water-courses cut off by the excavation, into the water-
course, which lower down crossed the defendant's farm.

The court found that this water, if the excavation had not
been made, would have naturally descended and flowed into the
stream, and that although the flow of water when the pumping
was going on was greater than it otherwise would have been,
the natural capacity of the water-course was sufficient to carry

off the water pumped into it, together with the other water running in the stream, and there was no finding that the defendant sustained any damage from the acts of the plaintiffs.

Under these circumstances, the act of the defendant, in filling up the channel and obstructing the flow of the water, was unlawful, and the judgment should therefore be affirmed.

All concur except DANFORTH, J., taking no part, having been of counsel.

Judgment affirmed.