## MIAL H. PECK, Respondent, *v.* MARTIN GOODBERLETT, Appellant.

In an action to recover damages caused by the alleged diversion by defendant of water from its natural channels into and upon plaintiff's land, the referee found, in substance, that the lands of the parties were so situated that plaintiff's land received the surface-water which flowed naturally from defendant's land; that defendant prepared his land for cultivation in the natural and customary manner, having in view the ordinary flow of surface-water in the existing and natural depressions in the land; that he erected a stone wall dividing his land from plaintiff's, leaving therein openings opposite dead furrows made by him on his own land, through which the water, still flowing in the natural direction, passed upon the plaintiff's land; that defendant had not diverted or interfered with any water-course, nor had he diverted the natural course of any surface-water, and in all he had done had acted in entire good faith, with the view to the cultivation and improvement of his own premises; that

no actual damage to the plaintiff's lands or crops could be attributed to these acts of defendant; that while at times the water passed on to plaintiff's land with slightly increased velocity, the quantity of water has not been increased by any act of defendant. The referee found for the defendant and dismissed the complaint. *Held,* no error; that defendant's acts were justifiable and did not constitute any actionable wrong.

No innovation or change in the distribution of water from a superior to an inferior tenement is material or the subject of condemnation, unless it works prejudice or injury of some sort to the inferior tenement.

An order granting or continuing a preliminary injunction during the pendency of an action, made before the defendant has answered, in no way affects the cause in a trial upon the merits. The plaintiff still has the burden of maintaining the issues joined.

One who invokes equitable relief and demands a preventive remedy becomes subject to the practice of courts of equity, where such relief only is administered as the nature of the case and the facts as they exist at the close of the litigation demand.

The General Term accepted the referee's findings of fact, but reversed the judgment upon questions of law. *Held,* that this court could only review the questions of law.

The defendant objected to a discussion of the case which goes beyond the cause of action stated in the complaint. No exception was taken by his counsel to a refusal of the referee to dismiss the complaint on that ground, and no objection was made to evidence offered by plaintiff as not within the pleadings. *Held,* that in the absence of such objections and exceptions it was the duty of the court below to give plaintiff the benefit of any cause of action established by the evidence.

(Argued March 15, 1888; decided April 10, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 24, 1885, which reversed a judgment in favor of defendant, entered upon the report of a referee, and ordered a new trial.

The nature of the action and the material facts are sufficiently stated in the opinion.

*Horace L. Bennett* for appellant. The owner or proprietor of land may fill up low or wet places or erect any structures thereon, for his own convenience, even though the surface-water naturally flowing thereover is thereby dammed up and set

back upon the upper proprietor: (*Goodale* v. *Tuttle*, 29 N. Y. 459, 467; *Barkley* v. *Wilcox*, 86 id. 140, 148; *Gould* v. *Booth, Comrs.,* etc., 66 id. 62; *Wagner* v. *L. I. R. R. Co.,* 5 N. Y. Sup. Ct. 163; *Gannon* v. *Hardigan,* 10 Allen [Mass.], 106; *Bates* v. *Smith,* 100 Mass. 181; *Butler* v. *Peck,* 16 Ohio St. 334, 341, 343; Angell on Water-courses, 133, 108; *Kaufman* v. *Greisemer,* 26 Penn. St. 40; *Martin* v. *Jett,* 13 La. 501; *Lattimore* v. *Davis,* 14 id. 161; *Somers* v. *Shiff,* 15 La. An. 300.) Independent of the defendant's right to erect structures on his land, he had a clear statutory right to build a division fence between his land and plaintiff's. (1 R. S. [Banks 7th ed.], 831.) As the cause of action, which the General Term says the plaintiff did establish, is not one for diverting a water-course, but for unlawfully interfering with surface-waters, the allegations of the complaint were unproven in their entire scope and meaning. This constitutes a failure of proof. (Code Civil Pro. § 541; *Goodale* v. *Tuttle,* 29 N. Y. 559; *Southwick* v. *First Nat. Bank of Memphis,* 84 id. 420.) A refusal to make a given finding upon conflicting evidence furnishes no ground for exception. (*Potter* v. *Carpenter,* 71 N. Y. 74; *Andrews* v. *Raymond,* 58 id. 262; *Simmons* v. *Richardson,* 5 Hun, 177.)

*J. D. Decker* for respondent. The upper proprietor has no right to cast the surface-water which comes upon his land from adjoining lands upon the land of his neighbor of the lower tenement, by drains, ditches or other artificial means. (*Noonan* v. *City of Albany,* 79 N. Y. 470, *McCormick* v. *Horan,* 81 id. 90; *Vander* v. *Taylor,* 65 id. 354; *Foot* v. *Bronson,* 4 Lans. 47; *Bellows* v. *Sackett,* 15 Barb. 101, 102; *Moran* v. *McClearars,* 63 id. 199; *Wolfe* v. *N. Y. C. R. R. Co.,* 58 id. 413; *Bastable* v. *City of Syracuse,* 8 Hun, 591; *Dickenson* v. *City of Worcester,* 7 Allen [Mass.], 22; *Miller* v. *Laubach,* 47 Penn. St. 154; Code of Napoleon, 176, chap. 1, § 640; Domat's Civil Law [Cush. ed.], 616, by Straham; *Lynch* v. *Mayor,* etc., 70 N. Y. 60.) The plaintiff was not called upon, after defendant's admission, to prove that the

latter made the ditches; if he did, and thereby opened up an inquiry which the defendant was at liberty to pursue, it furnishes no escape to the defendant from the effect of his own admission, nor does it enable him to avoid it. (*Page* v. *Willett*, 38 N. Y. 31; *Fleischmann* v. *Stern*, 90 id. 110; *Potter* v. *Smith*, 70 id. 299; *Phœnix Warehouse Co.* v. *Badger*, 67 id. 298; *Tell* v. *Beyser*, 38 id. 161, 162; *Van Dyke* v. *Maguire*, 57 id. 429; *Trimmer* v. *Hiscock*, 27 Hun, 374; *Boffins* v. *Codman*, 4 E. D. Smith, 325; Bacon's Abridgment, 459.) In determining whether any, and if so, how much damage was done to the plaintiff's land and crops by the flow of water through the dead furrows and " aperture," the referee erred when he allowed and instructed the defendant's witnesses to take his place and judge of the weight, credibility and value of the evidence produced by the plaintiff. (*Carpenter* v. *Blake*, 2 Lans. 206; *Seymour* v. *Fellows*, 77 N. Y. 178; *Doltz* v. *Morris*, 10 Hun, 201–205; *Guiterman* v. *Liverpool*, *etc.*, 83 N. Y. 358, 365; *Allison* v. *Scheeper*, 9 Daly, 365; *Hagadorn* v. *Com. Life Ins. Co.*, 22 Hun, 249; *Ayres* v. *Water Comrs.*, 22 Hun, 297.) It was error to allow the witnesses, who had not heard the evidence upon this branch of the case, to base their opinions upon the reading to them of the referee's minutes of the testimony, by the clerk of the defendant's attorney, in their office, closeted there by themselves, out of court, in the absence of the referee, and of the plaintiff and his attorney, and unauthorized by the referee and the plaintiff and his attorney, and without the knowledge or consent of the plaintiff. (*People* v. *Lake*, 12 N.Y. 363; *Carpenter* v. *Blake*, 2 Lans. 207.) The subject being the injury to plaintiff's land from the water flowing upon it, was not within the range of subjects which require expert evidence, which should be received only in cases of necessity. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Kennally* v. *Sellick*, 21 N. Y. Week. Dig. 72; *Teall* v. *Barton*, 40 Barb. 137; *McGregor* v. *Brown*, 10 N. Y. 114.) Upon the appeal to this court from an order granting a new trial, the respondent may sustain the order upon showing any legal error appearing upon the record, whether or not considered

by the court below, and if such error is shown the order will be affirmed and judgment absolute will be given against the appellant. (*Mackay* v. *Lewis*, 73 N. Y. 382; *Krekler* v. *Thaule*, 73 id. 608; *Simar* v. *Canaday*, 53 id. 298; *Cobb* v. *Hatfield*, 46 id. 533.) From the nature of the plaintiff's case the preventive remedy is the only one which can entirely rectify the evil complained of, and afford him adequate protection and redress. (*Foot* v. *Bronson*, 4 Lans. 52.)

DANFORTH, J. The plaintiff and defendant were owners of adjoining farms. The south line of the plaintiff's, was the north line of the defendant's farm, and having regard to the general slope or inclination of the land forming the premises, the plaintiff's farm was below and the defendant's farm above. The plaintiff was, therefore, so situated that his land must receive such surface-water as at any time flowed naturally from the defendant's land northerly, and for this he evidently could have no cause of action. His complaint, as set forth in the pleadings, is of a different character, viz., that, prior to 1876, a portion of the defendant's farm consisted of a marsh or swale from which the water flowed naturally in an easterly direction to the lands of one Wellman, and thence northerly to a certain creek, and so northerly along the east line of the plaintiff's land; that a ridge or knoll between the plaintiff's south line and the defendant's swale or marsh made it impossible for water to flow therefrom across the south line of the plaintiff, but, in that year, he charges that the defendant "wrongfully, and for the purpose of draining his land and his swale or marsh, dug and opened artificial ditches," from and across his land, and from his swale or marsh, northwardly through the ridge to the plaintiff's south line, and there "wrongfully entered and trespassed upon the plaintiff's farm and dug and continued the ditches "from his own land into the plaintiff's farm," and so diverted the water from the swale or marsh of defendant, "from its natural channels into and upon the plaintiff's farm," across the south line thereof, thereby flooding with water and rendering twenty-five acres of it unfit for use

and cultivation, and so flooding his wood lot that he cannot get wood from it as before, and his barn-yard so that it is impassable and unfit for use. His prayer is for an injunction against keeping open these ditches, or "diverting the water from its natural channels into and upon the plaintiff's land," and that he have from the defendant $500 damages. A very clear case was thus stated for equitable relief. A preliminary injunction order, reciting the diversion of water from its natural channel as the cause of action, and restraining it, was granted, but afterwards so modified as to apply only to what is known as the short ditch, and which appears to run from the swale to a long ditch, the latter extending to the south line of plaintiff's land.

The defendant's answer denied the incriminating averments of the complaint and set up that the ditches made by him followed the natural depressions in his land, and were made in the course of ordinary improvement and cultivation of his land, in good faith, and without any intention on the part of the defendant to injure the plaintiff or trespass upon his lands; that they do not change the natural course of surface-water over said land, nor sensibly concentrate it, nor increase its rush or flow upon the plaintiff's lands or the lands occupied by him.

The issues so made were sent to a referee for trial, and after the fullest examination of witnesses he found in favor of the defendant and dismissed the complaint. Upon appeal to the General Term the court accepted the findings of fact as correctly made, but reversed the judgment which followed the referee's conclusion of law, because, in their opinion, it, in effect, erroneously adjudged that the acts of the defendant, as found by the referee, were proper and justifiable and so did not constitute a wrong.

It is, of course, obvious that the questions raised by the pleadings were purely questions of fact, and the referee's answers to those questions having been adopted and approved by the General Term, the judgment of reversal and granting

a new trial not showing that the judgment on the findings was reversed on questions of fact, the case is open to review in this court on questions of law simply, and we have only to see whether any error is disclosed in the referee's conclusions, assuming the facts to be as stated in his decision or upon the various rulings upon objections raised by the defendant during the trial It is quite beyond our province, therefore, to follow the learned counsel for the respondent in his careful and elaborate examination of the testimony, for whatever might be our own opinion concerning it, we should be unable, in any lawful exercise of our appellate power, to go beyond the limitations within which the courts below agree in confining the effect of the testimony.

The findings of the referee show that the marsh or swale referred to in the complaint is a small spot of ground, some two or three rods in width, which, at the time defendant became the purchaser of said farm, was somewhat lower than the land immediately surrounding it, so that in the spring of the year surface-water would collect there, and not pass off as rapidly as from other portions of the premises; "that a short distance to the west of this spot, and running in a northerly direction up to the plaintiff's south line, and for a short distance into his wood lot, is a natural depression in the land about twenty-five feet in width, and that, from time immemorial, the surface-water caused by rain and melting snow have flowed northerly from said south ridge until they have reached the ridge, running north and south on Wellman's land, when they have divided, a portion thereof passing off towards the north-east into Basse's creek, and the other portion in a north-westerly direction into this low spot on defendant's land, and from thence into and through said depression in the ground northerly into plaintiff's wood lot, then into a ditch, running east and west on plaintiff's land, and from said ditch in a north-easterly direction, until they reached the aforementioned Basse's creek; that when the defendant purchased his farm in 1872, the said north lot was in a wild, uncultivated state, and he shortly

thereafter began to improve the same, and to that end he removed stumps, filled up low places, including this spot on the eastern boundary, and did whatever was necessary and proper to be done in order to bring it into a state of productiveness.

That, in cultivating said lot, the defendant plowed the same, north and south in lands, ten or fourteen paces wide, leaving a dead-furrow between these lands, and also in such a manner as to leave a dead-furrow through the said depression, and along his east line next to the Wellman wood-lot, which furrows were from six to eight inches deep, and he also planted and sowed said lot, including said low land and dead-furrows, with potatoes, corn, oats and other crops; that he plowed and cultivated said land in the usual and proper manner, and as it was customary for lands to be plowed and cultivated in that particular locality, and that in so plowing and cultivating said lands he had in mind the ordinary flow of surface-water thereon.

That after the commencement of this action defendant built a stone wall or fence along his east line, and also prior to the commencement of this action one along a portion of his north line, past this depression in the land and the dead furrow therein, and in so doing left an aperture in said wall, opposite said dead-furrow, about eighteen inches in width, for the purpose of allowing the surface-water to pass off from defendant's land onto plaintiff's wood lot, and that after this action was commenced, and in the month of August, 1880, the defendant continued said stone wall down to the one running along his east line, and at or about the same time he ran a corresponding furrow along the fence on his northerly line, connecting said east and west furrows.

That, prior to the cultivation and improvement of defendant's said land as aforesaid, the surface waters passing over the same onto the plaintiff's land through said depression were spread out so as to cover about the width of said depression, but that since the same were so improved and cultivated such waters have run into the dead-furrow at the bottom of said

depression, and have consequently been confined within a somewhat more contracted space, at times when the water was not so high as to fill up the entire depression, and have passed onto plaintiff's land with a slightly increased velocity, but that the quantity of water which thus finds its way onto plaintiff's land has not been increased by any act of the defendant.

The referee further found that no water ever passed onto plaintiff's land through the defendant's east furrow, until the spring of 1880, and that upon the protest and at the request of plaintiff defendant stopped the flow of water through said furrow, prior to or at about the time of the commencement of this action; that the plaintiff's wood lot just north of defendant's farm is a low, level piece of land, and that the water from said furrow has gullied its way through the same for the distance of eight or ten rods north of the defendant's north line, and that from those points such water in the spring-time spreads out through plaintiff's woods, and in times of unusual freshets over the meadow and cultivated lands adjoining said woods on the north and east, in substantially the same manner it did prior to the occupation and cultivation by the defendant of his said lands, and that no actual damage to plaintiff's land or crops can be attributed to the manner in which the defendant has cultivated and improved his premises, and adds: "I further find that the defendant has not diverted or interfered with any water-course or channel, nor has he diverted the natural course of any surface-waters on his land, but that in all he has done he has acted in entire good faith, and with a view to the cultivation, improvement and amelioration of his own premises for agricultural purposes."

It is well to notice that at the close of the evidence on both sides, counsel for the defendant asked the referee to dismiss the complaint on the ground that the plaintiff "has failed to make out the cause of action alleged" therein, saying, "if any is made out, it is not that alleged in the complaint, and there is a failure of proof." This was then denied, but after the case was summed up and submitted, the conclusion of the

referee upon the facts found by him was, that the evidence in the case fails to establish any cause of action alleged in the complaint, and he accordingly dismissed it. Against this conclusion the plaintiff's counsel presents, upon argument before us, many propositions. Among them is: (1.) That the order of the Special Term continuing the preliminary injunction as to the further use of the short ditch above referred to, and the defendant's obedience to the order, is "an adjudication in favor of the plaintiff, and establishes a right of action to that extent." The order is not entitled to that consideration. It was made before the defendant answered, and by its terms was to continue only during the pendency of the action. Its interposition was within the discretion of the judge or court granting it, but it in no way affected the case in a trial upon the merits. The plaintiff had still the burden of maintaining the issues joined in the action. (2.) "That the right to judgment depends upon the facts as they existed at the commencement of the action." Such is the rule in actions at law, but not in actions in equity. If the plaintiff might, upon the case stated by him, have sued at law, he did not. He invoked equitable relief, and demanded a preventive remedy as the only one sufficient to rectify the evils of which he complained, and thus became subject to the practice of courts of equity, where such relief only is administered, as the nature of the case and the facts as they exist at the close of the litigation demand. But if we are right in the disposition we shall make of the principal question, the time to which the acts of the parties were referred will be of no consequence.

The appellant objects to a discussion which goes beyond the cause of action stated in the complaint, but his counsel did not except to the refusal of the referee to dismiss the complaint upon that ground, nor was the evidence offered by the plaintiff objected to, for the reason that it was not within the pleadings. In the absence of such objections, it was the duty of the court below to give the plaintiff the benefit of any cause of action established by the evidence, and it is plain that both the referee and the General Term examined and stated the facts

with that end ·in view.  They reached different conclusions. But both agree, the referee by an express finding, and the General Term by adopting it, " that there was no diversion or interference by the defendant with any natural water-course · or channel, or even any natural course of surface-waters on his land, but that in all he has done he has acted in entire good faith and with a view to the cultivation, improvement and amelioration of his own premises for agricultural purposes." It follows that the point we have to decide is whether or not the defendant did anything upon his own land which he had not a right to do?  It is so narrowed because there is no suggestion in the findings, or even now upon argument, that the defendant did, in fact, enter upon, or do any act upon the plaintiff's lands.  A somewhat different case is, as we have seen (*supra*), made out by the complaint.  But so far as these allegations relate to ditching or other acts upon plaintiff's land, they are unsupported, and the case presented by the referee, as gathered from the testimony, is that the defendant prepared his land for cultivation in the natural and customary manner, having in view the ordinary flow of surface-water in the existing and natural depression of the land ; that he erected stone walls, dividing his land from that of his neighbor, leaving therein openings through which the water, still flowing in the natural direction, passed upon the plaintiff's land.  It does not appear that he did more than exercise the usual rights of ownership upon his own premises, or that what he did imposed any greater burden upon the plaintiff's land than it would have been subjected to had he done nothing.  Moreover, it is affirmatively found " that no actual damage to the plaintiff's lands or crops can be attributed to the manner in which the defendant has cultivated and improved his premises."  The water, unaffected by any act of the defendant, continues to find its way by gravitation to the plaintiff's land, and the only circumstance which gives color to the action is that it does so " with a slightly increased velocity ; " but this is immaterial if it causes no damage to the plaintiff.  This was a question of fact, and the plaintiff properly failed in his action, not only because the

question was answered in favor of the defendant, but because it did not appear that he had used his land in any unusual or unnatural way. The facts ascertained by the referee not only show that the defendant kept well within the maxim which requires every one so to use his own as not to injure another, but also that he did nothing that was not necessary and proper to enable him to have the fair and legitimate use of his own land. We agree, therefore, with the referee that those acts were justifiable and did not constitute a wrong.

Nor do we find in the various cases cited by the learned counsel for the respondent authority for any different conclusion. In *McCormick* v. *Horan* (81 N. Y. 86) it was held that the right of an owner of lands through which a water-course runs to have the same kept open and to discharge therein the surface-water which naturally flows thereto is not limited to the drainage and discharge of surface-water in the same precise manner as where the land was in a state of nature, unchanged by cultivation or improvements, but that the owner of such lands might change and control the natural flow of the surface-water therein, and by ditches or otherwise accelerate the flow or increase the volume of water which reaches the stream, and if he does this in the reasonable use of his own premises, he exercises only a legal right and incurs no liability to a lower proprietor. He may not do so to the damage of other owners, but it was also said that as the interests of society are promoted by the cultivation and improvement of the soil, the rule of law does not prevent the use of water-courses for artificial drainage, although the volume of the stream is thereby somewhat enlarged and the water is discharged at a different time or manner from what it would be if the land was kept in a state of nature, provided no material injury is occasioned to other riparian owners. In this case the rule from the civil law (Domat, vol. 1, § 1583, p. 616), and many, if not all the cases now quoted by the respondent from the decisions of our courts, were cited by counsel or the court and the doctrine established as above stated. A re-examination of the authorities would be superfluous here. Upon one vital point they

agree, that no innovation, no change in the distribution of water from a superior to an inferior tenement, is material or the subject of condemnation, unless it works prejudice or injury of some sort to the inferior tenement. And the remarks of the court in *McCormick* v. *Horan* (*supra*) and its decision cover the appeal now before us. In that case the discharge was into a stream of water flowing from a spring. In this the course of surface-water was so directed that it passed into a natural depression in the land through which a portion at least had been accustomed to flow, and so on to the plaintiff's land. The effect of the wall may have prevented some water from percolating upon the plaintiff's premises; the effect of the ditches or furrows was doubtless to direct the water to one channel, but that channel was the natural depression of land formed without the interference of man, and over which surface-water from time immemorial had been accustomed to find its way downward upon the plaintiff's farm. That an opening or culvert had been left in the wall for its passage, and that it was thus contracted to a smaller space gives no cause of action, for it simply permitted the water to flow as it before had done and without prejudice or damage to the plaintiff.

I have examined the other authorities cited by the learned counsel for the respondent and find none, which, upon the application of a neighbor, prohibits a land-owner from doing upon his own premises whatsoever is necessary to enable him to have the natural use of his land, nor any which permits the court to control him in any use he may make of it so long as that use does not injure another. Both points were in issue here and both were decided in favor of the defendant upon facts which, as we think, permit no other conclusion. It violates no rule of the civil law. In the passage cited by the respondent from Domat (vol. 1, § 1583, p. 616), the declaration that if rain-water or other waters have their course regulated from one ground to another, whether it be by the nature of the place " or otherwise, the proprietor of the place cannot innovate anything as to the ancient course of the waters," is qualified by limiting it to such changes as are "to the prejudice of the owner of the lower grounds." Under that

rule there must be damage, and there must be fault before the improvement can be hindered. (Id. § 1581.)

So in equity. In *West Cumberland Iron and Steel Company* v. *Kenyon* (twice reported *infra*), the action was brought to restrain the defendants from permitting water to flow from their premises upon the plaintiffs. The complaint was of an artificial arrangement. The plaintiff succeeded before the trial justice (6 Chy. Div. [L. R.] 773), but upon appeal (11 id., 782), the decision was reversed, several judges delivering opinions. BRETT, J., said: "This action is brought on the ground of an alleged breach of the maxim *sic utere tuo ut alienum non lædas*. The cases have decided that where that maxim is applied to landed property, it is subject to a certain modification, it being necessary for the plaintiff to show not only that he has sustained damage, but that the defendant has caused it by going beyond what is necessary in order to enable him to have the natural use of his own land. If the plaintiff only shows that his own land is damaged by the defendant using his land in the natural manner, he cannot succeed. So he must fail if he only proves that the defendant has used his land otherwise than in the natural way, but does not prove damage to himself." In view of these principles and the cases from our courts, of which *McCormick* v. *Horan* is but one of many, it is not necessary to pursue this branch of the appeal.

Very numerous exceptions were taken during the trial to the rulings of the referee upon evidence and to his findings of fact. The decision of the General Term makes the latter class immaterial in this court, for no finding is without evidence sustaining it, if, indeed, the evidence could in any view permit a different conclusion upon any material question.

The other exceptions disclose no error to the plaintiff's prejudice.

\*      \*      \*      \*      \*      \*      \*      \*

NOTE.— The omitted portion of the opinion is taken up with the discussion of questions as to the reception of evidence, in reference to each of which the conclusion is reached that, under the circumstances, there was no error, at least to plaintiff's prejudice.

The other exceptions require no comment. It must suffice to say that, in view of the issue presented to the referee, and the course of plaintiff's testimony upon the trial, no greater latitude was taken by the respondent than the referee was justified in allowing or the fair elucidation of the merits of the case required. The exceptions to his rulings disclose no legal error.

It follows that the order of the General Term reversing the judgment of the Special Term and granting a new trial, should be reversed and the judgment on the report of the referee affirmed.

All concur.

Judgment reversed.