(17 Misc. Rep. 229)

### LEONARD v. HOTEL MAJESTIC CO. et al.

(Supreme Court, Special Term, New York County. May, 1896.)

1. NUISANCE—USE OF PROPERTY.
    The use of a driveway in the rear of an hotel for the purpose of carrying in supplies is reasonable, and therefore will not be enjoined as a nuisance, at the instance of the owner of adjoining premises used as a residence, though wagons are driven into the hotel at an early hour in the morning, to the disturbance of such adjoining owner and his family.

2. COVENANTS—RESTRAINING USE OF LAND.
    A covenant in a deed, that the grantee "will not erect, or permit the erection * * * of, any building which shall contain an alley or entrance running through it for ingress or egress to rear buildings," does not forbid the grantee, who had lawfully erected an hotel on the premises, from maintaining a driveway along the rear of the premises for the purpose of carrying in hotel supplies.

Action by Theodore W. Leonard against the Hotel Majestic Company and Jacob Rothchild to enjoin defendant hotel company from maintaining a driveway adjacent to plaintiff's residence. Complaint dismissed.

William B. Putney, for plaintiff.
Charles H. Brush and John D. Kernan, for defendants.

RUSSELL, J. The plaintiff seeks an injunction to restrain the Hotel Majestic Company from maintaining the use of a driveway adjacent to the residence of the plaintiff. The hotel occupies the Central Park face west between Seventy-Second and Seventy-First streets, running back on each street 150 feet. This driveway, covered by the upper part of the hotel structure, is adjacent to the east wall of the plaintiff's residence, his house facing on Seventy-Second street, and he owning through to Seventy-First street, using the rear part on Seventy-First street for a yard connected with his home. The driveway for the hotel extends through the block, the whole length of the plaintiff's lot, and is used mainly at the Seventy-First street entrance to admit wagons carrying supplies to a courtyard midway in the building. Such deliveries begin often very early in the morning, at an hour when the plaintiff's family are asleep, and are continued to some extent during the day. The Seventy-Second street en-

trance to the driveway is usually securely closed by iron gates, and is used, not very frequently, upon stormy occasions, for the admission of carriages for the entrance of ladies and guests at night, under the protection of the covered drive.   The bed of the driveway was originally composed of manufactured stone, or cement filled with crushed stone, so that wagons, the wheels of which are covered with iron or steel tires, make a noise and cause some vibration, which is carried through the two feet of intervening wall to the inside of the plaintiff's house.   After the action was begun, the defendants inserted some windows in the covered archways between the driveway and the plaintiff's lot, and also covered the driveway with asphalt, so that the noise and vibration were lessened to some extent. The plaintiff complains of the use of the driveway on the ground that it is a nuisance, and also on the ground that it is in violation of the restrictive covenants as to the use of this section of the city contained in deeds before either of the parties to the litigation obtained title.

It is a very difficult thing ordinarily to determine how far the right of use of property extends, where it occasions serious annoyance to a neighboring owner.   The maxim that one shall so use his own as not to harm another's holdings is thoroughly imbedded in the unwritten law of this state, but the difficulty always arises in the application of the maxim.   The hotel company had the right, beyond doubt, to construct its hotel, and that right is not here questioned. The value of property consists in its capacity for use, and usually for convenient use.   The plaintiff saw the building of the hotel, and had conversations with the owner with reference to the use of the covered driveway during the construction of the building.   He could not, of course, foresee then fully the possible annoyance it might occasion him and the family, but his knowledge has some bearing upon the discretion of the court when he asks the court to prevent the use of the structure in part.   Equitable relief, even where a strict right exists to the complaining party, is so largely discretionary, where great hardship to the defendant will ensue from the maintenance of such relief, or where there is doubt as to whether the legitimate use of property has been exceeded to the annoyance of others, that all of the consequences of the enforcement of such relief will be duly considered, as well as the conduct of the parties towards each other carefully weighed.   Columbia College v. Thacher, 87 N. Y. 311; Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 983.   It is not a true test whether the use of property injures a neighbor's property, or even whether that injury was the natural consequence, or even that it may be considered as a nuisance.   The real test is whether the dominion exercised by the owner is a reasonable use of his property, having due regard to all of the interests affected, and the requirements of public policy.   Booth v. Railroad Co., 140 N. Y. 267, 35 N. E. 592.   The interests of public policy require the free and untrammeled use of property for its reasonable incidental purposes.   It is an encouragement to the legitimate extension of enterprise and business that such uses shall obtain, even if the noise of busy machinery, or the activity of man in other ways, produces noise

and confusion which is really annoying to neighboring owners. I cannot say that the uses existing at the time of the trial of the driveway in question, by the owner and lessee, were not reasonable uses of the property for the purposes of the hotel, and it is the uses existing at the time of the trial which must govern the result in this case. Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350. I cannot, therefore, enjoin the defendants upon the plea that they are maintaining a nuisance.

Nor do the restrictive covenants made by the then owners of the property involved, in 1866, help the plaintiff to maintain the action. The covenant relied on reads as follows:

"The party of the second part, for himself, his heirs and assigns, doth hereby covenant to and with the parties of the first part, their successors and assigns, and with the owners, for the time being, of the adjacent land, jointly or severally, * * * that he will not erect or permit the erection * * * of any building which shall contain an alley or entrance running through it, for ingress or egress to rear buildings; and it is declared that this covenant is a lien on, and runs with, the land, and binds the persons seised thereof for the time being."

This covenant evidently referred to driveways to tenement houses, stables, or business structures from the street to the rear of the buildings in front, for common use by different persons. The driveway through from one street to the other is not within the verbiage, nor is an opening for an alley or entrance to an interior part of a single structure. The construction claimed by the plaintiff would prohibit an entrance 100 feet away from the plaintiff's building, as well as one adjoining his residence. The application of the restriction cannot be sustained.

Again, the plaintiff bought at a time when a large hotel was on the upper corner of Seventy-Second street and Central Park west,— the Dakota. That neighborhood, since the restriction, has become partially changed in its character, and this consideration also affects the discretion of a court of equity in enforcing a restrictive clause. Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741.

The complaint in this action is therefore dismissed upon the sole ground that at the time of the trial of this action the same was not maintainable from the facts disclosed. I do not think it necessary to broaden the grounds of the decision, and only give one sufficient reason for the result attained. Costs are not awarded, for the action of the owner of the hotel after the suit was begun, in improving the conditions of the cause of the annoyance, was a moral recognition of his duty to do what he might have done before the suit was begun, although I do not find it necessary to hold that it was in any sense a recognition of an obligation enforceable by action.

Complaint dismissed, without costs.