Supreme Court, Livingston County, April, 1899. Unreported.

In the Matter of the Petition of JOSIAH V. LOCKLIN for a Restraining Order against FRED D. WOOLLETT.

To the Supreme Court:

I, William A. Sutherland, the referee appointed by the order of this court made January 31st, 1899, to take and report the evidence to the court, together with my opinion, do hereby certify and report that from the evidence taken before me I am of opinion that the following facts are established:

The defendant occupies a building in the village of Caledonia and holds a liquor tax certificate such as is granted to hotel-keepers. That on the 26th day of November, 1898, the defendant's premises were visited by two inspectors of the excise department named Bradley and Parsons, on which date the defendant had two bed rooms on the first floor of his hotel, and four bedrooms in the second story. These inspectors (pages 8 and 17) found

only six bed rooms in the house, including the upper front room as one of them, and were informed by the defendant that he and his wife had accommodations outside of the hotel. Of these four upper rooms one was the front room, which doubtless at one time had constituted a parlor or sitting room. Immediately in the rear of this front room (page 6) was one of the six bedrooms which had no window, but which received its light from the windows in the front room through an aperture or doorway between the two rooms (page 7). In the rear of this windowless room was another bed room, and in the rear of that still another, each of which was lighted only by skylights (page 1). In every other particular than the matter of lights the three bedrooms last above described complied with the statute, that is to say, each of them had independent access to the hallway and each of them contained the necessary cubic feet space and square feet area.

The hotel premises of the defendant were in the condition above described from November 26, 1898, up to and including February 17, 1899, the date of the first hearing in this proceeding.

Between February 17, 1899, and the date of the second hearing March 11th, 1899, changes were made in the interior of the hotel as follows: The front room in the second story had been divided into two rooms by the erection of a partition running north and south and easterly of the doorway opening into the dark room (page 26). At this date, March 11th, this dark room marked number four on the map (exhibit 1) had no window, but had a door opening into the hallway.

Between the date of the hearing on March 11th and the date of the third hearing, March 27th, (page 83), still further changes were made in the second story of the defendant's hotel as shown by a map (defendant's exhibit two, March 27, 1899), as follows: A hallway has been extended along the face of what was the original front room, or parlor or sitting room, so that on the said date of March 27th, there was an independent doorway from both front rooms opening into this hallway as well as an independent doorway from the original dark room opening into the hallway, and (page 99) a window has been inserted over the door leading from the original dark room into the hallway, which window complies with the statutory requirements as to dimensions. On the said 27th day of March, 1899, the defendant's hotel was equipped with seven bedrooms, two on the first floor and five on the second floor. Rooms number three and four shown on the map last

produced are still lighted by skylights. That the defendant Woollett was advised by three excise agents visiting his place officially on different dates that his hotel very nearly complied to the statutory requirements, was directed by them to make certain structural changes, with which directions he complied. That the defendant Woollett had endeavored to comply with the directions given him from time to time by the special agents of the excise department, and has endeavored to make his hotel conform structurally to the requirements of the statute as the statute was interpreted to him by these excise agents. That the defendant Woollett and his wife have lived at the said hotel during the period covered by his said license and are accustomed to occupy one of the said bedrooms for sleeping accommodations.

That from about the first day of August, 1898, until about the last day of October, 1898, the defendant suffered and permitted a gambling device known as a nickel-in-the-slot machine to be set up in one of the main rooms, or office, of his said hotel, during which time the said nickel-in-the-slot machine was used and operated by those who chose to do so to a greater or less extent.

That when the machine was set up in the defendant's hotel the defendant was informed and advised that the machine was not a gambling device and had been so declared by a court of competent jurisdiction. That subsequently, and at about the time the said machine was taken away from the said hotel the defendant was informed and advised that the said machine was a gambling device and had not been pronounced otherwise by any court of competent jurisdiction, and the defendant did thereupon, or very soon thereafter, cause the said machine to be removed from his said hotel and returned to its vendor, or former owner, and the same has not been in use in his said hotel since the date last above mentioned.

The foregoing are all of the facts which I deem established by the testimony offered before me, and, in addition to the allegations of the moving papers which are admitted in the answering affidavits, constitute all the facts proved in this matter.

Several legal questions have been argued before me with great earnestness, upon which my opinion and the decision of the court thereon will only be useful in serving as a guide in the future to the defendant and others interested in these questions.

Two remedies were open to the petitioners in this case on

account of any infringement of the Raines Law. By application to the court under one section of that law proceedings might be instituted for a revocation of the license issued to the defendant. Under another section of the same act these proceedings were instituted, not for a revocation of the license, but for an injunction to restrain the defendant from trafficking in liquors in an unlawful manner.

An injunction is of course a preventive remedy. It relates to the future rather than to the past. It was stated by Judge Danforth in Peck v. Goodberlett, 109 N. Y. 180, 189: "He invoked equitable relief, and demanded a preventive remedy as the only one sufficient to rectify the evils of which he complained, and thus became subject to the practice of courts of equity, where such relief only is administered, as the nature of the case and the facts as they exist at the close of the litigation demanded."

In the Peck case the plaintiff had sought an injunction to restrain the defendant from emptying unusual quantities of water upon plaintiff's farm, by means of a ditch, dug by the defendant, which changed the ordinary course of the water. Soon after the commencement of the action the defendant closed up that particular ditch and the court denied the plaintiff the injunction which he asked and dismissed his suit, with costs, pointing out that if the plaintiff had sued for damages he might have obtained judgment for the damages which had accrued up to the time of bringing his action, but, as he had asked for preventive rather than compensatory relief, and as the situation at the time of the trial showed that no need of an injunction existed, the injunction would be denied and the complaint dismissed.

So in this case, the interior arrangements of the defendant's hotel have been materially changed since the commencement of these proceedings, and I am of opinion that at the date of the last hearing the defendant's hotel was shown to be structurally in conformity with the requirements of the law.

I cannot agree to the contention that the hotel had complied structurally with the requirements of the statute previous to the changes last made notwithstanding the insistent and vehement opinion and advice of the special agents of the Excise Department.

The statute says, section 31, subdivision 2, that there must be independent access to each room by a door opening into a "hallway" and that each room must have "a window, or windows,

with not less than eight square feet of surface opening upon a street, or open court, light shaft or open air." The so-called dark room on the second floor of the Woollett house, being room number four on the map, exhibit one, March 11, and being number five on the map, exhibit two, March 27th, did not until the change shown by map (exhibit two) have any window or windows whatsoever, but there was a doorway between the said room and the front room through which doorway light could enter this otherwise dark room. So the change testified to by the witness as taking place between the date of the first hearing and the hearing on March 11th, 1899, whereby the upper front room was cut into two rooms by the building of a partition, did not render the new room number seven on the west end of the front of the second story obedient to the statute. There was on the 11th day of March, 1899, no doorway opening from this room number seven into any hallway and there was no independent access to this room number seven "by a door opening into a hallway." The door from room number seven opened only into this dark room number four and one had to pass through that room in order to reach the hallway.

One of the excise agents who had visited the defendant's hotel was a lawyer and had been district attorney of his county. It is therefore easy to see how the defendant could be induced to rely upon his advice, and he advised the defendant that the rooms thus arranged conformed with the statute, but it seems to me that when a statute says a room must have independent access by a door opening into a hallway the courts cannot count as one of the six bedrooms required by the statute a room from which a guest cannot reach the hallway save through a door which opens into another bedroom likely to be occupied by another guest.

The defendant and his counsel seem to lean towards this view of the statute for notwithstanding the advice so emphatically given by the three agents of the excise department between the hearing on the 11th day of March, 1899, and the hearing March 27, 1899, the defendant has concluded to extend a hallway between these two rooms so that now there is a doorway opening directly from room number seven into the hallway. So, too, although no window had been provided for the dark room in the rear of number seven until subsequent to the hearing on March 11th, yet it was conceded in connection with the production of the map on March 27th, 1899, that over the doorway leading into the hallway from this dark room had been built a

window conforming to the statutory requirements as to dimensions.

On the other hand, I do not agree to the contention that the skylights are not sufficient windows for two of the rooms on the upper floor.

The statute says that each bedroom must have " a window * * * opening upon a street, or open court, light shaft or open air."

It is urged by the petitioners that a window can only be a window if it is located in the side of a .building and yet the statute contemplates some kind of an opening for the admission of light by means of a " light shaft " and the statute would be satisfied if a window should open into such a light shaft. The two rooms in question are supplied with light through skylights. There is but one definition of the word skylight given in Webster's dictionary which is as follows: " A *window* placed in the roof of a building, in the ceiling of a room or in the deck of a ship, for the admission of light from above." It seems to me that every purpose of the statute is fulfilled whether the quantity of light deemed desirable for a bedroom enters that room through the ceiling of the room or through the side of the room, and certainly the Legislature has said that if the light enters through a window . opening upon an air shaft the requirements of the statute are fulfilled.

Whatever fault could have been found with the defendant's premises prior to the hearing of March 27th it appeared that on that day his hotel was furnished with seven sleeping rooms each fully complying with every requirement of the statute. The defendant therefore had on that date, and presumably intends to maintain· six fully equipped bedrooms for the accommodation of guests in addition to the one occupied by himself and wife.

Whatever consequence might have followed had some other remedy been invoked than an injunction it seems to me clear that an injunction is not within reach of the petitioners whose only effect would be to prohibit the defendant from going to the expense of restoring his rooms to the conditions they were in prior to March 27th. In other words, all occasion for complaint against the character of the defendant's hotel having now vanished an injunction will not issue to prohibit the defendant from doing what he has ceased to do and what it is evident he does not intend to do. These views apply not only to the complaint as to

the structural conditions of the rooms but also as to the use of the gambling device known as the nickel-in-the-slot machine. Whatever penalties might have been visited upon the defendant for permitting this machine to be operated during the few weeks it was in his hotel, he having voluntarily removed it and discontinued its use before the commencement of this proceeding an injunction will not issue to prohibit him from continuing its use. I am of the opinion that the proceedings against the defendant Woollett should be dismissed.

Rochester, N. Y., April 21, 1899.

W. A. SUTHERLAND,
*Referee.*