JENNINGS v. BOHNER.

(Supreme Court, Special Term, Wayne County.  April 3, 1912.)

1. WATERS AND WATER COURSES (§ 38*)—"NATURAL WATER COURSE"—WHAT CONSTITUTES.

A natural water course is a stream having defined bounds and continuity of flow.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 30; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 5, pp. 4671–4672.]

2. WATERS AND WATER COURSES (§ 124*)—PONDS OR RESERVOIRS—INJURIES BY FLOWAGE—INJUNCTION.

Where plaintiff's farm, adjoining that of defendant, received the surface waters by their flow through a 'depression, and on defendant's farm there was a surface water pond, and defendant dug a ditch connecting with the depression, and thereby threw upon plaintiff's land an additional quantity of surface water, an injunction would lie.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 142; Dec. Dig. § 124.*]

3. WATERS AND WATER COURSES (§ 119*)—PONDS—RIGHT TO FLOW IN.

An owner on whose land there is a pond gathering surface waters has the right to fill up the pond by lowering and scraping its banks, although the effect is to increase the flow through a depression on his farm to the lower lying land of another and, if the result of laying tile from the pond is merely to draw off surface water in the direction in which it would naturally flow, the lower owner has no cause of action, unless the increased volume of surface water results in actual, appreciable damage to his land.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 131–134; Dec. Dig. § 119.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WATERS AND WATER COURSES (§ 124*)—SURFACE WATERS—PERMANENT IN-
JUNCTIONS.
Where there is no proof as to what the results to plaintiff's lower
lying lands will be under existing conditions from the flow of surface
water from defendant's higher land caused by filling a pond in which
surface water collected, a permanent injunction or the award of perma-
nent damages will be denied.
[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 142; Dec. Dig. § 124.*]

Action for injunction and for damages by J. Caroline Jennings
against Frederick Bohner. Judgment for plaintiff for damages, and
permanent injunction denied, with leave to bring action for per-
manent injunction or for damages.

Lee & Dowling, for plaintiff.
Clyde W. Knapp, for defendant.

SUTHERLAND, J. The farms of plaintiff and defendant adjoin
each other, with an east and west highway running between. From
north to south across the two farms is a depression into which sur-
face waters naturally work their way. The depression itself dips
continuously to the south, and extends for a distance of upwards of
2,000 feet from the north end of the defendant's farm to some woods
on the southerly side of plaintiff's farm, and the surface water com-
ing into the depression from the east or west will work itself south
along the entire length of this depression. The plaintiff's land lying
lower than defendant's land receives the surface water as it flows
southward from defendant's farm along this line of least resistance.
[1] There is no living stream there or water course in the strict
sense of the term, having defined banks and such continuity of flow
as is characteristic of a natural water course, but for upwards of
2,000 feet the descent to the south is so continuous that surface wa-
ters, unaided or unimpeded by artificial channels or obstructions, will
work southward through this depression and onto plaintiff's prop-
erty. The highway running east and west has been elevated at the
depressed point, and the commissioner of highways has caused a
12-inch sewer pipe to be laid under the road for the purpose of car-
rying through from north to south the waters that accumulate at that
point.

At the extreme north edge of defendant's farm there was a sink
hole or pond from which the water did not work itself off naturally
to the south, there being along the southern edge of this pond a slight
elevation in the natural contour of the soil which, in the process of
plowing from east to west, may have been slightly increased in height.
At all events, it prevented the waters from this pond or slough hole
from working off through this depression which has been spoken of
toward the south and onto plaintiff's premises. North of this pond
was a spring which, in time of plentiful water had an outlet running
into the pond; but in the summer season the spring dried up, and was
not in itself any considerable source of water. The water which
gathered in the pond was mostly surface water from the higher
ground, north, east, and west thereof.

In April, 1911, the defendant cut through the bank on the southerly edge of the pond, digging a ditch there to the depth of several feet. The ditch was extended in a southerly direction, following in the remainder of its course the center line of the depression before mentioned, until it reached the edge of the defendant's property abutting on the highway, ending at a point opposite the sluiceway under the road. The effect of opening this ditch was to release the waters of the pond on the north edge of defendant's property, and said waters flowed across defendant's farm and through the sluice under the road and onto plaintiff's farm. Into this ditch there was also collected surface waters which would naturally accumulate in the depression along the course of which the ditch was laid, and these surface waters, together with the waters released from the pond, flowed in a considerable quantity down to the south line and under the road, and onto plaintiff's land, where the water spread out in a wide area, moving off very sluggishly, delaying thereby to some extent the plowing of that portion overflowed. At the point where the culvert is laid under the road, water from the farm of an adjoining owner is also gathered in considerable quantities, which also flows through the culvert and onto the plaintiff's land.

After a time defendant laid a four-inch tile from the edge of the pond through the entire length of the ditch and covered the same and thereafter cultivated his field in the usual manner. The south end of the tile is uncovered at a point on defendant's land, but in close proximity to the sluiceway under the road. Later in the season of 1911 the defendant plowed and scraped down some knolls into the bed of the old pond and filled it up to a considerable extent, so that now defendant claims the entire surface at that point can be plowed over, and that the water will not stand at the point where the old pond was. The plaintiff brought this action in April, 1911, before the tile was laid and the ditch covered, and before the pond hole was filled up by the plowing and scraping aforesaid. She asks damages and for a permanent injunction.

[2] I think the plaintiff has proved that by the cutting away of the bank of the pond early in 1911 and the digging of the ditch there was thrown upon her land a quantity of water which would not have reached there by the ordinary movement of surface waters; and because of the increased volume of water thus thrown upon her land she has a cause of action. Foot v. Bronson, 4 Lans. 47; White v. Sheldon, 35 Hun, 193; Vernum v. Wheeler, 35 Hun, 53.

[3] But it is the right of the defendant to fill up the sink hole or bed of the pond by cutting down the adjacent knolls and scraping the earth in so as to prevent the accumulation at that point of water in the future, irrespective of any ditch leading therefrom. If the act of filling in the sink hole or bed of the pond would make the flow of surface water down the depression to the south and onto plaintiff's land somewhat greater than it had been theretofore, it would not, in itself, give plaintiff any cause of action. Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519. And, if the result of laying tile is merely to draw off the surface water in the direction in which it naturally would flow, so that defendant's field could be more

134 N.Y.S.—60

advantageously tilled, the plaintiff has no cause of action because of the laying of the tile drain, unless there is such acceleration in the flow of the water, or such increased volume in the aggregate as to result in actual and appreciable damage to the plaintiff's farm. Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350; McCormick v. Horan, 81 N. Y. 86, 37 Am. Rep. 479.

It would be most unfortunate if the court were obliged to hold that no underdraining whatsoever can be done by a progressive farmer along the line which surface water would naturally take, if the neighbor lower down is disposed to raise objection. Under the conditions as they existed at the time the action was commenced, real and actionable damage was being inflicted upon plaintiff; but, after the pond hole was filled up with earth and the tile laid and the ditch covered, it does not appear that water came through there in such quantities as to inflict any further damage upon plaintiff's land.

[4] Whether there will be such damage during the season now about to open remains to be seen. Accordingly, I have determined to award to the plaintiff now such damage only as she suffered during the year 1911, through the carrying of the pond waters onto her farm, but to refuse at this time an injunction or permanent damages because of lack of proof as to what the results will be under the conditions as they now exist.

The damage to the plaintiff during the season 1911 has been greatly exaggerated by the tenant of her farm. He claims that he was not able to plow the land overflowed until too late to plant potatoes, and that thereby he lost the benefit of the crop for the year on four or five acres of ground. In this I think he is mistaken, and that the fact is that the land could have been plowed very much earlier than it was in the season of 1911. Indeed, most of the land could have been plowed in time for a potato crop if the matter had been attentively pursued. However, there was some delay, which plaintiff had a right to complain about. I think $25 damages will be ample compensation for the year 1911, and the judgment may provide for the payment of damages in that amount for the year 1911, with costs.

An injunction is now denied; but the plaintiff is given leave to apply at the foot of this decree on 15 days' notice to the defendant at any time within one year, for a permanent injunction, if she can show to the satisfaction of the court upon any subsequent hearing thus brought on, that the outflow of water from the drain does materially increase the damage which plaintiff would naturally sustain from surface water flowing in her direction in the absence of any artificial channel, or plaintiff may bring a new action for an injunction or for damages subsequent to this time.

This is a situation in which it would seem that a reasonable amount of neighborly co-operation would obviate the necessity for any more litigation. If the time and money spent in litigating the question were used in constructing a system of connecting drains, relieving the farms of both parties, the results would be much more profitable to them.