# Richmond.

RIVERSIDE COTTON MILLS v. LANIER.

DECEMBER 3, 1903.

Absent, Buchanan, J.*

1. PLEADING—*Torts—Joint and Several—Misjoinder—Demurrer—Motion to Abate.*—Any number of tort feasors may be sued jointly if it be alleged that all participated in the wrong. The plaintiff has his election to sue all, or any one, and the right to join all is not affected by the fact that there may exist a difference in the degree of their liability, or of the *quantum* of evidence necessary to establish such liability. Under statute, however, in this State the remedy for a misjoinder of parties is to move the court to abate the suit, or action, as to the party improperly joined, and to proceed against the others as if no misjoinder had been made.

2. APPEAL AND ERROR—*Conflicting Evidence.*—A plaintiff in error, in the appellate court, occupies the position of a demurrant to the evidence, and if the evidence is conflicting the judgment of the trial court will be affirmed.

3. WATERS—*Change of Distribution—Superior and Inferior Tenements.*—No change or innovation in the distribution of water from a superior to an inferior tenement is material unless it operates to prejudice or injure in some way the inferior tenement.

4. WATERS—*Easement of Drainage—Successive Grants from a Common Grantor.*—If the owner of an entire tract or lot of land subdivides it into separate lots, and conveys them to different persons, the successive grants of the upper lots carry by implication to the purchasers thereof the easement of flowage for spring and surface water along natural channels over the lands of lower lot owners. Such easement, or *quasi* easement, when apparent, continuous and reasonably necessary to the enjoyment of the upper tenement, passes to the purchasers by implied grant.

*Judge Buchanan was detained at home by sickness.

Error to a judgment of the Corporation Court of the city of Danville in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error and the city of Danville were the defendants.

*Affirmed.*

The evidence sufficiently appears in the opinion of the court. The following instructions referred to in the opinion were given:

### Plaintiff's Instruction, No. 1.

"The court instructs the jury that it is the duty of the city of Danville, as a municipal corporation, acting under its charter, to keep the public culverts and drains, under its control, open and free from obstructions; that if they believe from the evidence that the culvert in question running under the railroad and River street, to Dan river, at a point on the lot of defendant Riverside Cotton Mills, which formerly received the water from the said drain through plaintiff's lot, is a public culvert and under the control of the said city, that then it was the duty of said city to use reasonable diligence in keeping it open and free for the passage of such water as was accustomed to flow through it; and that, after a reasonable notice thereof, if said city failed to use reasonable diligence in causing said obstructions to be removed, then it is liable to plaintiff for such damage as he thereby suffered up to the 9th day of September, 1899, being the date of the injunction obtained against said city by the defendant Riverside Cotton Mills.

"And, further, the court instructs the jury that if they believe from the evidence that said culvert is a public culvert and that the obstructions of said culvert complained of by plaintiff were placed therein or thereat by defendant Riverside Cotton Mills, that then it is also liable to plaintiff for the damage thereby caused him.

### No. 2.

"The court further instructs the jury that if they believe from the evidence that the drain running from between the hills above plaintiff's lot, through the same, into the culvert under the railroad and River street, thence to Dan river, is an ancient, well-defined, natural water-way, made or cut into the soil by flowing surface or spring water, which from time immemorial has conveyed the surface and spring water from above, through plaintiff's lot into Dan river, then the defendants had no right to close it up or to cause it to be obstructed below plaintiff's lot, and force back upon him water and its contents, which from time immemorial had been carried in said drain, through his lot, to the river, and that if defendants, or either of them, did so obstruct said drain below plaintiff's lot, and thereby damage him, then that defendant causing the same is liable to the extent of the damage thereby done to plaintiff, whether the said culvert under River street which forms a part of said drain, is a public culvert or not.

### No. 3.

"The court further instructs the jury that if they believe from the evidence and in the light of the other instructions given by the court, that either one of defendants is guilty of the charges in the declaration and liable in damages therefor, and that the other defendant contributed to the tort or wrong, then both are individually responsible for the whole wrong, as if each had done all without help."

### Instruction for City of Danville, No. 4.

"On motion of the city of Danville, the court instructs the jury that although they should believe from the evidence that the town of North Danville extended the culvert in question

from the railway embankment to and across the Halifax road, now called River street, and into and upon the lot now owned by the Riverside Mills, thence emptying the water from the culvert into Dan river, this alone did not make the culvert a public sewer or drain, and did not charge the town of North Danville, or the city of Danville with the duty of maintaining the culvert free of obstruction for its entire length, whether the same was under its streets or under and upon private property."

Instruction of City of Danville, No. 5.

"The court instructs the jury that unless they believe from the evidence that the drain and culvert in question was a public drain and culvert, wholly under the control of said city, there is no duty or obligation upon the said city to keep the same free from obstruction, and they must find for the defendant, unless they shall further believe from the evidence that the injuries complained of were caused wholly by defects in the construction and maintenance of that part of the culvert under the city's property. And they are further instructed that the acts of the city, mayor, policeman and engineer in going upon and opening the obstructed culvert upon the complaint of the plaintiff, or in attempting to open, or in giving directions to open the obstructed culvert, are not sufficient to charge the city of Danville with the control, or ownership of said culvert, unless the jury believe from the evidence that the acts of said officers were authorized or ratified by the Council of said city."

Instruction of Riverside Cotton Mills, No. 6.

"On motion of the Riverside Cotton Mills the court further instructs the jury that even if they should believe from the evidence in this cause that the plaintiff has been damaged by obstruction to the flow of water over his lot, there should be no

verdict against the defendant, the Riverside Cotton Mills, therefor, unless they shall also believe from the evidence that the damage was occasioned by some wrongful conduct of the said Riverside Cotton Mills."

Instruction of Riverside Cotton Mills, No. 7.

"On motion of the Riverside Cotton Mills, the court further instructs the jury that the Riverside Cotton Mills is not responsible for any damage they may believe from the evidence in the cause the plaintiff sustained in consequence of obstruction to the flow of water from his lot occasioned by his own buildings or by his neglect to keep open a way for the water to flow off from his lot or by any use of his lot, made or permitted by him, nor are they responsible for damages resulting to the plaintiff's property by obstructions to the flow of the water from his lot by buildings, or otherwise, occasioned by other persons than the Riverside Cotton Mills."

Instruction of Riverside Cotton Mills, No. 8.

"On motion of the Riverside Cotton Mills, the court further instructs the jury that if they believe from the evidence in this cause that at the time of, and before the well opened on the east side of the railroad under the Baugh house for the water coming down in the rear of the plaintiff's and adjacent stores to pass into and out from, was filled over, and the water was flowing over it, and over the railroad, and that the culvert into which it led was also filled over at the end on the Riverside Cotton Mills lot, and that it was not in use then to carry off the water, but the water being surface water, was passing off over the railroad, there was no duty upon the Riverside Cotton Mills to keep it open at the end on their lot, and if they failed to do so, the plaintiff has no cause of action or right to recover damages against them therefor."

Instruction of Riverside Cotton Mills, No. 9.

"On motion of the Riverside Cotton Mills, the court further instructs the jury that if they believe from the evidence in this cause that damage to the plaintiff's property was done by surface water only, and that the defendant, the Riverside Cotton Mills, did nothing to occasion it except to grade up and level the surface of its lot in *bona fide* improving it and building their mill and appurtenances upon it, they must find for the defendant, the Riverside Cotton Mills."

Instruction No. 10.

"The court instructs the jury that the meaning of a natural water course, or stream, as the term is applicable to the case under consideration, is a place where spring or surface water has been accustomed to gather and flow along a well-defined channel, which by frequent running it has worn or cut into the soil."

Instruction of Riverside Cotton Mills, No. 11.

"The court further instructs the jury that if they believe from the evidence in this cause that the Riverside Cotton Mills stopped the culvert in question at its mouth on their lot, in grading and improving its lot, and thereby obstructed the flow of the water through it, and caused it to stand upon, and damage the plaintiff's lot, and shall also believe from the evidence in the cause, that, notwithstanding this conduct upon the part of the defendants, the plaintiff, after knowing of it, by the exercise of reasonable care and prudence, could have prevented the injury or damage to his lot therefrom, and did not do it, they must find for the defendants.   Given as amended."

The following instructions tendered by the Riverside Cotton Mills were refused:

### No. 12.

The court instructs the jury that a natural water course is a natural stream flowing in a defined bed or channel, with banks and sides, having permanent sources of supply.

### No. 13.

"On motion of the Riverside Cotton Mills, the court instructs the jury that if they believe from the evidence in this cause that sone one without legal authority and proceedings, and without the consent of, or agreement with, the Riverside Cotton Mills, or any previous owner thereof, built and extended the culvert disclosed in the evidence beyond the Halifax road, or River street, on to and upon the lot of the Riverside Cotton Mills, and thereby caused to be conducted to and emptied upon the lot of the Riverside Cotton Mills surface water, and that the Riverside Cotton Mills, in a *bona fide* and legitimate improvement of its lot, and in grading it up for that purpose, graded above and stopped the mouth of said culvert, such act of the Riverside Cotton Mills was not wrongful and afforded no cause of action to the plaintiff, even if he was damaged in consequence of obstruction to the flow of surface water thereby, and even though the surface water was thereby caused to flow back upon or obstructed from flowing away from plaintiff's property."

### No. 14.

"On motion of the Riverside Cotton Mills, the court further instructs the jury that if they believe from the evidence in this cause that some one, without legal authority and proceedings, and without the consent of, or agreement with, the Riverside Cotton Mills, or any previous owner thereof, built and extended the culvert shown in the evidence to have been originally built

by the railroad company under its roadbed, from its terminus, as built by the railroad company, across the Halifax road, or River street, to and upon the lot of the Riverside Cotton Mills, and that through this culvert surface water from the lots of owners on the opposite side of the railroad, including the lots of the plaintiff, flowed, on to and was emptied on the lot of the Riverside Cotton Mills, bearing to and depositing thereon, billets of wood, tin cans, ashes, mud, sand, and other rubbish and noxious matter, from the lots of landowners, including the plaintiff, and that the Riverside Cotton Mills, in grading and levelling its lot for the *bona fide* purpose of building upon and improving, and in building upon and improving it, filled it above and stopped the mouth of that culvert on its own ground, so that the flow of surface water and deposit of rubbish and noxious matter it brought and emptied on the lot of the Riverside Cotton Mills lot was thereby prevented at that point, and the surface water and refuse matter caused to flow back upon or stand on plaintiff's lot, no cause of action or right to recover damages of the Riverside Cotton Mills was thereby given plaintiff."

## No. 15.

"On motion of the Riverside Cotton Mills, the court further instructs the jury that if they believe from the evidence in this cause that the lot owned by the Riverside Cotton Mills lies along the river and between the Halifax road, or River street, and the river, and that many years ago the owner of the property lying on the opposite side of the railroad and extending along up North Main street on the east side thereof from the railroad to the spring at the head of the ravine shown by the evidence in this cause to have existed many years ago, undertook to grade and improve said property and in doing so took the water from said spring in pipes to and along down North Main street to a railroad tank, and some of it from thence to their depot building,

thus diverting said spring branch from said ravine and filled said ravine and the bed along which said spring branch had previously run all the way down from said spring to the railroad below, to the heighth of many feet, thereby making building lots fronting on said street and extending across where said ravine was, and that this filling up of the ravine raised the surface of the ground so that the surface water flowing over it when it reached the railroad below, was thirteen feet or more above the elevation at which it passed that point before the ravine was filled as above herein set out, and that at that point it was emptied into a well constructed to receive it and passed perpendicularly down to the mouth of a culvert constructed to take it under the railroad and then into an extension of this culvert made without legal authority or permission of the owners of the lot under the Halifax road, or River street, and on to and upon the lot of the Riverside Cotton Mills and discharged from such extended culvert on to the Riverside Cotton Mills lot, bearing wood and rubbish and refuse matter. And the Riverside Cotton Mills, in building upon and *bona fide* improving its lot graded and levelled it above the mouth of the culvert on its lot, thereby stopping it at its mouth and preventing the flow of said surface water and refuse matter through it, and impeding or preventing the flow of the surface water over plaintiff's lot, such conduct of the Riverside Cotton Mills afforded no cause of action against them by the plaintiff for any injury resulting to him by thus impeding the flow of the surface water over and from his lot."

## No. 16.

"On motion of the Riverside Cotton Mills, the court instructs the jury that if they believe from the evidence in this cause that by the extension of the culvert from its terminus, as constructed by the railroad, across the Halifax road, or River street, and on to and upon the lot of the Riverside Cotton Mills, the water that

flowed through it was diverted from its course and emptied upon that lot of the Riverside Cotton Mills at a point and made to cross it along a line different from its usual course and flow, and from what it would have done if it had been left free to flow away, and the Riverside Cotton Mills in building upon and improving its lot, graded and levelled it above the mouth of this culvert on its lot so as to stop it and prevent the flow of the water through it, such conduct on their part gave no cause of action or right to recover damages to the plaintiff, even if thereby he suffered damage because of impeded flow of surface water over and from his lot."

## No. 17.

"On motion of the Riverside Cotton Mills, the court instructs the jury that surface water is held in the language of the law to be a common enemy, against which each owner of land has the right to protect himself as best he may, and is not liable in damages to adjacent and coterminus owners of land for protecting himself against the same.

"So, the court further instructs the jury that if they believe from the evidence in this cause that the defendant, Riverside Cotton Mills, in 1893, purchased of the city of Danville a lot adjacent to and lying below the lot and property of the plaintiff, for damages, to which this action is brought, that at the time the said defendant became the owner of this lot there projected in and upon said lot a pipe or conduit which constituted the extension of an artificial culvert or drain-way, which had been constructed for the passage way of the surface water from the lands above, that neither said culvert or drain-way or the said pipe or conduit so extending in and upon the lot aforesaid, now owned by the said defendant, were constructed under any legal authority, or contract with the Riverside Cotton Mills, or with their consent, or with that of the city of Danville, from whom

the said defendant purchased said lot or any prior owner thereof, or with their consent, and that the defendant, the Riverside Cotton Mills, in grading and filling up its said lot for the purpose of improving the same, closed up the said pipe or conduit, so projecting in and upon its lot, that it had the right so to do, and that if this resulted in backing surface water upon the plaintiff's property, yet the said defendant is not responsible for damages caused thereby."

*Peatross & Harris,* for the plaintiff in error.

*Julian Meade,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This is an action of trespass on the case brought by the defendant in error, W. S. Lanier, against the city of Danville and the Riverside Cotton Mills, the plaintiff in error, to recover damages for injury to a lot and buildings upon it, the property of the defendant in error, fronting on the east side of north Main street, in what is now the fourth ward of the city of Danville.

The injury complained of is alleged to have been occasioned by the wrongful conduct of the defendants in obstructing the flow of water through a culvert under the roadbed of the Southern Railway Company, and River street, in the city of Danville, in and upon a lot of the defendant, the Riverside Cotton Mills. The plaintiff maintains that the obstruction referred to prevents the water from escaping through the culvert and across the lot of the Riverside Cotton Mills into Dan river, and caused it to back up and spread over the lot and under the storehouses and into the storerooms of the plaintiff, to the great damage of his property.

Upon the trial there was a verdict and judgment for the city

of Danville, which eliminates that defendant from the case. But the jury returned a verdict against the Riverside Cotton Mills, the judgment upon which is now the subject of review.

There are two counts in the declaration, to both of which the defendant demurred. The grounds of demurrer relied on are, (1) For the misjoinder of defendants, and (2) That the declaration, and each count thereof, shows that the original surface and natural drain described therein had been changed and made artificial, and the course and flow of the surface water from the adjacent watersheds had been diverted and gathered into artificial channels by the owners and grantors of the plaintiff and other owners of the lands lying above the lot of the defendant, and emptied in accumulated volume upon its lot. Also, that the culvert referred to was extended upon defendant's land without authority, and constituted a trespass upon that property.

In respect to the first ground of demurrer, the general rule is that any number of tort feasors may be joined in the same action, where all are alleged to have participated in the wrong. They may be sued jointly or severally, at the election of the plaintiff; and that is true, notwithstanding there may exist a difference in the degree of liability, or the *quantum* of evidence necessary to establish such liability. But, if there had been a misjoinder, the remedy by statute now is to move the court to abate the suit or action as to the party improperly joined, and to proceed against the others as if such misjoinder had not been made. Acts 1895-'6, p. 453; *Lee* v. *Mut. R. F. L. Asso.,* 97 Va. 160, 33 S. E. 556.

The second ground of demurrer is based upon a misconception of the allegations of the declaration. The first count alleges that when the plaintiff acquired the lot in question there was a branch or natural drain, which conducted the water from a bold spring, and also the surface water from an extensive watershed, through the rear part of plaintiff's lot and under one of his storehouses, over an adjoining lot to a receiving well near

the right of way of the Southern Railway Company, leading into
a public culvert under the control of the city of Danville, through
which all of said water was carried under the roadbed of the
railway company and under River street, a public highway of
the city into Dan river, on a lot owned by the defendant, the
Riverside Cotton Mills.    The second count varies from the first
in that it charges that the drain or water channel referred to was
established before the memory of man as a well defined water
way from a very extensive watershed into Dan river about one
hundred feet from plaintiff's lot; that between plaintiff's lot and
Dan river, about thirty years prior to the institution of this
action, a railroad, now the Southern Railway, was built across
the water drain, and to avoid any interference with the drain or
water way, a large and ample culvert was constructed under
the railroad bed, which continued the drain without interrup-
tion; that soon thereafter the property owners along the drain
or water way built and graded North Main street, and im-
proved the lots running back therefrom across the drain, in-
cluding plaintiff's lot, by filling them in and filling the drain
along the whole length thereof to the culvert under the railroad,
at which point a large square well was built around the culvert,
so that the mouth of it was not obstructed or impaired, but was
raised and adjusted so as to correspond with the elevation of
the drain and the aforesaid improvements.    That the town of
North Danville, in the limits of which plaintiff's lot and the
watershed and drain were located, acting under its charter pow-
ers, began at the lower end of the culvert, as constructed by the
railway company, and extended it to Dan river on a lot then
owned by the defendant, the city of Danville, over which cul-
vert, so constructed, the city of Danville built two public high-
ways, one of which led over the culvert to a railroad station, and
the other across the same parallel with Dan river, now known as
River street; that subsequently the city sold and conveyed its
lot, with the end of the culvert thereon emptying the water

into Dan river, to the defendant, the Riverside Cotton Mills; that the Riverside Cotton Mills made valuable improvements on the lot, and soon thereafter the corporate limits of the city of Danville were so enlarged as to embrace the territory of North Danville; that from time immemorial, all along the drain, property had been bought, sold and improved with respect to the existence of the drain, and that plaintiff acquired and improved his lot, depending upon the continued existence and maintenance of the drain to Dan river as it had formerly existed.   The declaration also alleges the wrongful stoppage of the lower end of the culvert by the defendants on the lot of the Riverside Cotton Mills, and the consequent damage to the property of the plaintiff by the obstruction to the flow of water along the drain across his lot.

It will thus be observed that, in point of fact, the declaration is not amenable to the objections contained in the second assignment, and sets out a good cause of action.   There was no error, therefore, in the judgment of the trial court overruling the demurrer.

Exception was also taken by the plaintiff in error to the action of the court in giving and refusing certain instructions.

Without undertaking to discuss the instructions *seriatim,* it is sufficient to remark that the ruling of the court, with respect to them, is without error, and that the instructions which were given, read in connection with the pleading and evidence, fully and fairly submitted the law of the case to the jury.

The remaining assignment of error is, that the court overruled the motion of the defendant to set aside the verdict, as contrary to the law and evidence.

In considering this assignment, it must be borne in mind that the case stands here as on a demurrer to evidence, and it is beyond the province of this court to follow counsel for the plaintiff in error in his discussion of the countervailing evidence upon which he relies to sustain his theory of the case.   Acts

1891-'2, p. 962, amending sec. 3484 of the Code. *Southern Ry. Co.* v. *Aldridge's Adm'x,* 101 Va. 142.

The testimony which it is permissible to consider shows that prior to the construction of the culvert in question there was above it a natural drain, through which the water from a spring and the surface water which gathered in a ravine or hollow flowed into Dan river. In the year 1874, the Virginia Midland Railroad Company, in constructing its roadbed across the mouth of that ravine, provided a culvert for the passage of the water which naturally flowed through the drain. In the year 1883, the town of North Danville, in improving River street by raising its grade, extended the culvert under the same, from which the water flowed into a natural open drain across the lot, then owned by the city of Danville, into Dan river. In the year 1893, the city of Danville sold the lot to the Riverside Cotton Mills, which company, in the year 1897, so obstructed the mouth of the culvert as to prevent the water from passing through it, and occasioned the damage to the property of the plaintiff for which he sues. While it appears that the lot owners fronting on the east side of North Main street have filled in their lots, as described in the declaration, it also appears that the improvements made along the ravine decreased rather than increased the flow of surface water through the lot of the defendant, the gutters along North Main street carrying off surface water from the watershed on the west side of the street which formerly flowed into the ravine, and filling in the lots on the east side caused some of the surface water, which before the improvement flowed down the ravine, to find an outlet along North Main street.

The doctrine seems to be well established that no change or innovation in the distribution of water from a superior to an inferior tenement is material unless it operates to prejudice or injure in some way the inferior tenement. *Peck* v. *Goodbertell,* 109 N. Y. 180, 16 N. E. 350. Thus in *McCormick* v.

*Horan*, 81 N. Y. 86, 37 Am. Rep. 479, it was said, that the right of an owner of lands through which a water course runs, to have the same kept open, and to discharge therein the surface water which naturally flows thereto, is not limited to the drainage and discharge of surface water in the same precise manner as when the land was in a state of nature, unchanged by cultivation or improvements, but that the owner of such lands might change and control the natural flow of the surface water therein, and by ditches or otherwise accelerate the flow or increase the volume of water which reaches the stream, and if he does this in the reasonable use of his own premises he exercises only a legal right.

In Jones on Easements, sec. 766, it is said: "The owner of land through which a water course runs is liable for obstructing the channel and turning the water from its channel upon adjacent land to its injury. He is liable for storing the water by a dam, and then discharging it in such quantities as to overflow the banks of the stream, and injuring the lands of a riparian owner below, and may be restrained by injunction. He is liable also for obstructing the channel and thereby throwing the water back upon the land of the upper proprietor." Citing in support of the last proposition *Ames* v. *Dorset Marble Co.,* 64 Vt. 10, 23 Atl. 857. At sec. 768, the learned author observes: "A drain or ditch established by the acquiescence of two adjoining landowners cannot be obstructed or abolished by the lower or servient owner alone without the consent of the upper or dominant owner, if the drain or ditch has been constructed in accordance with the natural flow of the water, and the quantity of the water has not been increased, nor its flow diverted, by the owner of the higher land. The rights and duties of the original parties in such case pass to their grantees with the land." *Vannest* v. *Fleming,* 79 Iowa 638, 44 N. W. 906, 8 L. R. A. 277, 18 Am. St. 387.

Again, it is an agreed fact that the whole of the ravine, from

its head to the river, including the lot of the Riverside Cotton Mills, at one time belonged to a common owner. When, therefore, the common owner divided the tract into separate lots and conveyed them to different parties, the grants carried, by implication, to the upper lot owners the easement of flowage for spring and surface water, along natural channels over the lands of lower lot owners to the river. Such easement, or *quasi* easement being *apparent* and *continuous* and *reasonably necessary* to the enjoyment of the upper tenements, passed to purchasers by implied grant. *Scott* v. *Beutel,* 23 Gratt. 1; *Hardy* v. *McCullough,* 23 Gratt. 251; *Stevenson* v. *Wallace,* 27 Gratt. 77; *Sanderlin* v. *Baxter,* 76 Va. 299, 44 Am. Rep. 165; *Scott* v. *Moore,* 98 Va. 668, 37 S. E. 342, 81 Am. St. 749.

Applying the foregoing principles to the testimony in the case, the judgment complained of is without error, and must be affirmed.

*Affirmed.*