# Richmond.

## CARLTON AND ANOTHER v. BOUDAR.

### March 16, 1916.

1. PLEADING—*Misjoinder of Parties—Demurrer—Motion to Abate.*—A misjoinder of parties cannot be taken advantage of in this State by demurrer. The remedy provided by statute is to move the court to abate the suit or action as to the party improperly joined.

2. PLEADING—*Joint Wrongdoers—Contribution—Demurrer.*—While, as a general rule, contribution between wrongdoers cannot be compelled, this does not render a declaration against two or more wrongdoers demurrable. For a joint wrong an action may be brought against all, or any one, or any intermediate number of those liable.

3. CARRIERS—*Holding Out as Common Carrier—Transfer Companies—Taxicabs.*—A transfer company which is authorized by its charter to engage in the transportation for hire of passengers and their baggage from the various railroad stations and other points in a city and in two adjacent counties, and provides taxicabs or other vehicles which attend the depots of the various railroads in the city, and transports passengers from and to the same, and holds itself out as ready to receive and transport all who apply for passage and are ready to pay compensation for the service, is a common carrier of passengers and subject to all the liabilities of such carrier.

4. PLEADING—*Joint Tort—Negligence of Common Carrier and Third Person—Indivisible Injury.*—When the negligence of a common carrier of passengers and of a third person concurs in producing a single indivisible injury, they are jointly and severally liable, although there was no common duty, common design, or concert of action, and although the duties owing by each to the party injured were diverse and disconnected.

5. STATUTES—*City Ordinances—Conflict.*—Where, in the course of litigation, a conflict arises between an ordinance of a city and the statute law of the State, the latter prevails and the former must yield.

6. INSTRUCTIONS—*Partial View of the Evidence.*—It is error to give an instruction which takes a partial view of the evidence.

7. AUTOMOBILES—*Absence of Lights—Violation of Statute—Proximate Cause of Injury.*—The failure of an automobile to carry a headlight

one hour after dark, as required by statute, is not sufficient to charge the operator thereof with negligence, where such failure had no causal connection with the injury complained of.

8.   VERDICTS—*Conflicting Evidence.*—The credibility of witnesses is for the jury and not for the court, and where the evidence is conflicting the verdict of the jury is conclusive.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*R. H. Talley* and *S. S. P. Patteson,* for the plaintiffs in error.

*Smith & Gordon,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This action was instituted in the Law and Equity Court of the city of Richmond by Thomas Boudar against the Richmond Transfer Company and E. S. Carlton to recover damages for an injury sustained by him on the 13th of November, 1914.

The record discloses the following facts: On the night of the 31st of October, 1914, shortly after eight o'clock, Boudar was traveling as a passenger in a taxicab of the Richmond Transfer Company, from Byrd Street station, in the city of Richmond, to his home on Grove avenue. About the time indicated, the taxicab, operated by a chauffeur of the Richmond Transfer Company, came to the intersection of Grove avenue and Lombardy street, going in a westwardly direction. At the same time an automobile owned by the defendant, E. S. Carlton, and operated by a chauffeur employed by him, was going in an eastwardly direction, until it reached the intersection of those streets, when it turned north into Lombardy street. The chauffeur of the taxicab claimed that he had the

right of way and that the collision which ensued was caused by the chauffeur of Carlton's automobile making a short instead of a long turn at the intersection of the streets and thus placing Carlton's machine in such a position that a collision was inevitable. Carlton's chauffeur claimed, on the other hand, that his machine had the right of way, having made the long turn at the intersection of the streets and started north before the taxicab reached Lombardy street. He also claimed that the taxicab was running at an excessive rate of speed and, although carrying the lights required by the city ordinance, did not carry the headlight prescribed by State statute. As a result of the collision, Boudar's head came in contact with the top of the taxicab, inflicting severe injuries upon him for which the jury gave him a verdict for $3,000 against both defendants, upon which the court entered judgment, and both defendants applied for and obtained a writ of error.

The first error assigned is that the court erred in overruling the demurrer to the declaration. The grounds of demurrer are as follows: That the Richmond Transfer Company is charged in the declaration with being a common carrier of passengers, while the defendant, E. S. Carlton, is not so charged; that if a common carrier, then the Richmond Transfer Company owed to the plaintiff the highest degree of care to avoid injuring him, and is liable for the slightest negligence, but that the defendant, Carlton, owed to the plaintiff only ordinary care to prevent injury to him, and is liable only for a breach of that duty; that different degrees of care being required of the defendants, they cannot be joined in one action. Secondly, that the declaration does not set forth a joint liability, and either defendant can be sued separately, but not jointly. Third, that there can be no contribution among wrongdoers, and they should not, therefore, be joined; that this action is a misjoinder not only of the parties, but of actions, the liability being different as to each defendant.

A misjoinder of parties cannot be taken advantage of by demurrer. The remedy by statute (Acts 1895-6, sec. 3258-a, Pollard's Code) is to move the court to abate the suit or action as to the party improperly joined. *Riverside Cotton Mills* v. *Lanier,* 102 Va. 159, 45 S. E. 875; *Lee* v. *Mut. R. F. L. Asso.,* 97 Va. 160, 33 S. E. 556.

The general principle is stated by 1 Shear. & Red. on Neg., sec. 31, as follows: "If the injuries caused by the concurrent acts of two persons are plainly separable, so that the damage caused by each can be distinguished, each would be liable only for the damage which he caused, but if this is not the case, all persons who contribute to the injury by their negligence are liable jointly and severally for the whole damage."

In *Riverside Cotton Mills* v. *Lanier, supra,* it is expressly held that tort feasors may be sued jointly "notwithstanding there may exist a difference in the degree of liability, or the *quantum* of evidence necessary to establish such liability."

In *Staunton Telephone Co.* v. *Buchanan,* 108 Va. 813, 62 S. E. 928, it is said that "cotrespassers are jointly and severally liable, and the party injured may sue all of them jointly, or two or more of them jointly, or one of them severally, as he may see proper."

To the same effect see Graves' Notes on Torts, p. 1.

That contribution between wrongdoers cannot be compelled does not render the declaration against two or more wrongdoers demurrable. The general rule seems to be that contribution between wrongdoers cannot be compelled, but to this rule there are numerous exceptions, with respect to which we give no opinion. The demurrer we think was properly overruled.

The second assignment of error is made on behalf of the Richmond Transfer Company, and is to the effect that it is not a common carrier.

The declaration in each count charges that the Richmond Transfer Company was engaged as a common carrier, and that the plaintiff became and was a passenger for reward. In the

charter of the company it is provided that "the business of said company shall be the transportation and carriage of passengers and their baggage, and other persons and goods, wares and merchandise to and from the various railroad stations and other points in the city of Richmond, and in the counties of Henrico and Chesterfield."

"The distinction between a public or common carrier of persons and a private or special carrier of the same is that it is the duty of the former to receive all persons who apply for a passage." Angell on Carriers, sec. 524.

The proof is that the vehicles of this company attended upon the depots of the various railroad companies, and held themselves out as ready to receive and transport all who applied for passage and were ready to pay compensation for the service.

"To constitute one a common carrier it is necessary that he should hold himself out to the community as such. This may be done not only by advertising, etc., but by actually engaging in the business and pursuing the occupation as an employment." *Nashville R. R.* v. *Messino,* 1 Sneed (Tenn.) 225.

In Babbitt on Motor Vehicles, sec. 620, it is said: "A 'taxicab' is to be classed with the public horse-drawn hack, or, to use the English name, a 'hackney carriage.' Such vehicles are usually operated for public purposes by individuals or corporations, as were the older style omnibuses and hack lines. They may be presumed in most cases to fall within the classification of carriers of passengers as described in the preceding sections."

To fasten upon the proprietors the character of carriers of passengers, it is immaterial whether or not they ply their vocation within the limits of a town or from one town to another. Thompson on Carriers of Passengers, p. 26, n. 1.

In Huddy on Automobiles, at p. 38, it is said: "An automobile may be used as a common carrier, a private carrier, or a personal private conveyance. Public motor vehicles, such as sightseeing cars, taxicabs, and others which are employed in

carrying all persons applying for transportation, come within the definition that a common carrier of passengers is one who undertakes for hire to carry all persons who may apply for passage."

"The common carrier of goods," says Dobie on Bailments and Carriers, p. 300, "is one who holds himself out, in the exercise of a public calling, to carry goods, for hire, for whomsoever may employ him. From this definition it appears that the essential characteristics of the common carrier of goods are: (a) He must carry as a public employment by virtue of his general holding out; (b) He must carry for hire, and not gratuitously." And at page 518 the author says: "The same considerations that distinguish the common from the private carrier of goods apply to set apart the common and the private carrier of passengers. . . . The common carrier of passengers holds himself out to carry all proper persons who apply. The private carrier makes no such profession, and engages in the transportation of passengers only by virtue of special contract made in each individual case, into which contract the private passenger carrier can enter or not, as he chooses. He can refuse, either for a bad reason or no reason at all, to transport individuals without incurring any liability for such refusal."

At page 519 Dobie says: "The most important common carriers of modern times are railway and steamboat companies, street railways (whether surface, elevated, or underground), and the proprietors of omnibuses, hacks, and taxicabs." Citing numerous cases in support of the statement.

In Black's Law Dictionary it is said that a carrier is "One who undertakes to transport persons or property from place to place, by any means of conveyance, and with or without compensation. . . . To bring a person within the description of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally, and he must hold himself out as ready to transport goods for

hire, as a business, not as a casual occupation. . . . A common carrier may therefore be defined as one who, by virtue of his calling and as a regular business, undertakes for hire to transport persons or commodities from place to place, offering his services to all such as may choose to employ him and pay his charges."

In *Van Hoeffen* v. *Columbia Taxicab Co.*, 179 Mo. App. 591, 162 S. W. 694, the St. Louis Court of Appeals says that, "A taxicab company following the business of transporting persons for hire from one part of the city to another, and holding itself out to carry one and all, is a common carrier of passengers, and is subject to all the liabilities of such a carrier. . . . Where a traveler enters a taxicab, which is the vehicle of a common carrier, the relation of passenger and carrier is established, and the carrier becomes bound to protect him, not only from insult and assault by outsiders, but from its own servants."

We have, then, the charge in the declaration that the Richmond Transfer Company is a common carrier; we have the provision of its charter that its business shall be "the transportation and carriage of passengers and their baggage, and other persons and goods, wares and merchandise to and from the various railroad stations and other points in the city of Richmond, and in the counties of Henrico and Chesterfield," and we have the unquestioned proof that it holds itself out as a common carrier of passengers, ready to perform that service for all proper persons who apply and are ready to make proper compensation for the service.

Having reached the conclusion that the Richmond Transfer Company is a common carrier of passengers, the duty which it owes to those passengers is established by law. The declaration denominates it a high degree of care, while as to the defendant, Carlton, it is said that he owed only ordinary care to the plaintiff, but the fact that two defendants are joined upon whom the law imposes different degrees of duty to the person

injured is not material, and if each of the defendants have been guilty of negligence, it matters not that one may have been more negligent than the other.

In *Riverside Cotton Mills* v. *Lanier, supra,* it is said that : "Any number of tort feasors may be sued jointly if it be alleged that all participated in the wrong. The plaintiff has his election to sue all, or any one, and the right to join all is not affected by the fact that there may exist a difference in the degree of their liability, or of the *quantum* of evidence necessary to establish such liability." *City of Richmond* v. *Gallego Mills Co.,* 102 Va. 165, 45 S. E. 877; *Staunton Telephone Co.* v. *Buchanan, supra.*

In *Walton, Witten & Graham* v. *Miller,* 109 Va. 210, 63 S. E. 458, 132 Am. St. Rep. 908, this court said: "When the negligence of two or more persons concurs in producing a single indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert of action."

In Cooley on Torts (3d Ed.), at p. 246, the author continuing his discussion of what constitutes a joint wrong, or a joint liability, says: "In respect to negligent injuries, there is considerable difference of opinion as to what constitutes joint liability. No comprehensive general rule can be formulated which will harmonize all the authorities. The authorities are, perhaps, not agreed beyond this, that where two or more owe to another a common duty and by a common neglect of that duty such other person is injured, then there is a joint tort with joint and several liability. The weight of authority will, we think, support the more general proposition, that, where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concert of action. In a recent New Jersey case (*Matthews* v. *Delaware L. & W. R. Co.,* 56 N. J. L. 34, 27 Atl. 919, 22 L. R. A. 261) it is said: 'If two or more persons owe to another the

same duty, and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well-settled principles each, any or all of the tort feasors may be held. But when each of two or more persons owes to another a separate duty which each wrongfully neglects to perform, then although the duties were diverse and disconnected and the negligence of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint and the tort feasors are subject to joint and several liability.' By the weight of authority, if a person is injured by a collision between the trains or cars of two companies, then, if both companies are negligent, both are jointly and severally liable. So if a person is injured by a defect or obstruction in a public street and such defect or obstruction was negligently caused by some third party, such as a street railroad company, with respect to its track, or a contractor doing work in the street, or by a company maintaining electric wires, or an abutting owner, and the municipality is also negligent in permitting such defect to exist or remain, then the municipality and such third party are jointly liable. "But" (adds the author) "there is a strong dissent from this view."

In *Colegrove* v. *New York & New Haven R. Co.,* 20 N. Y. 492, 75 Am. Dec. 418, it is held that "Railroad corporations, both chargeable with negligence causing collision of their trains, are liable to a joint action for damages for injuries sustained by a passenger." And in a note to that case a number of cases are cited to the same effect.

In *Matthews* v. *Delaware, Lackawanna & Western R. Co.,* 56 N. J. L. 34, 27 Atl. 919, 22 L. R. A. 261, the facts are stated by Mr. Justice Magie as follows: "Matthews, the plaintiff, brought an action of tort in the Essex circuit against the defendants to recover damages for an injury received in a collision between a locomotive of the railroad company and a car (in which he was a passenger) of the railway company. There was a verdict in favor of the railway company and against the

railroad company. The railroad company obtained a rule to show cause why the verdict against it should not be set aside. Plaintiff obtained a rule to show cause why the verdict in favor of the railway company should not be set aside." The rules were consolidated and certified to the court, and it was held that, "One injured by a collision between a locomotive of a railroad company and a car (in which he was a passenger) of a street railway company may maintain a joint action against both companies if the collision was produced by the neglect of the railroad company to give notice of the approach of the locomotive, concurring with the neglect of the railway company to observe proper care in crossing the railroad track. Although such duties are. diverse, and the neglect to perform each is separate and disconnected, yet,. as the wrongdoing of one company unites with that of the other in causing injury, the tort is joint, and one or both tort feasors may be sued."

We are of opinion that the plaintiffs in error were jointly and severally liable; that their negligence concurred and produced a single indivisible result, and they were properly joined as defendants, although there was no common duty, common design or concert of action between them.

On behalf of the defendant, Carlton, it is assigned as error that the court erred in refusing to give the second instruction asked for by him, which is to the following effect: "If the jury believe from the evidence that the accident occurred more than an hour after sunset and that the taxicab was not properly and legally equipped with lights, and that the failure to display such lights caused the accident, then the defendant, Carlton, is not liable, and you should find in his favor."

The statute law of this State, by an act passed March 17, 1910, Pollard's Supplement, vol. 3, p. 970, provides that, "Every machine operated in this State shall have displayed from one hour after sunset to one hour before sunrise at least one white light, throwing a bright light at least one hundred

feet in the direction in which the machine is going, and also shall exhibit in the rear of the machine one red light, which shall effectually illumine the number tag on the rear."

The petition states that the lower court refused to give this instruction on the ground that the ordinance of the city governed and not the State statute.

Where, in the course of litigation, a conflict arises between the ordinance of a city and the statute law of the State, the latter prevails and the former must yield, and we apprehend that the trial court would not have hesitated so to rule. There are objections to the instruction requested which fully sustain its refusal by the court. It presents a partial view of the evidence, which by our practice, established by numerous cases, was quite sufficient to warrant its rejection. It is true that the taxicab had no headlight, but it does not appear that there was any causal connection between the absence of the headlight and the collision which caused the injury that is the subject of this suit. The taxicab had side lights, which were visible for more than a square, and it was in fact seen by Carlton's chauffeur. There was abundant evidence that both chauffeurs were guilty of negligence. There is evidence that Carlton's chauffeur made a short turn, though he denies it; there is evidence that the taxicab was running at a high rate of speed, which also is denied, but the jury by their verdict have concluded both those controversies. It would have availed the plaintiff in error, Carlton, nothing to have added to the proof of the taxicab's negligence. It would in no degree have condoned or diminished his own negligence; so that we think the court was fully justified in refusing the instruction asked for.

We are of opinion, therefore, that no error was committed as to the instructions.

Upon the motion to set aside the verdict as contrary to the evidence, there is testimony strongly tending to prove negligence on the part of both the chauffeurs. The plaintiff in the court below, indeed, seems to have had an easy task. The

Richmond Transfer Company established the guilt of Carlton's chauffeur, and Carlton, on the other hand, if his witnesses are to be believed, overwhelmed the Transfer Company with proof of its derelictions. The credibility of the witnesses is for the jury and not for the court.

Upon the whole case, we are of opinion that there is no error, and that the judgment should be affirmed.

*Affirmed.*