**BATES v. MILLER et al.**
No. 132.

Circuit Court of Appeals, Second Circuit.
Feb. 1, 1943.

Fred Flatow, of New York City (Macpeak, Flatow & Abramowitz, of New York City, on the brief), for defendants-appellants.

Sidney Greenman, of New York City (House, Grossman, Vorhaus & Hemley and David Vorhaus, all of New York City, on the brief), for plaintiff-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

About midnight on December 29, 1939, plaintiff, while a passenger on a bus of Pan-American Bus Lines, Inc., sustained personal injuries as the result of an accident involving the bus and a truck and trailer owned by defendant Miller and operated by defendant Rupp. Plaintiff first sued the Bus Lines alone, but after the latter had impleaded Miller and Rupp under Rule 14, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, plaintiff amended his complaint to charge negligence against all. Upon trial the jury first rendered a verdict of $16,500 against the Bus Lines, and of $6,000 against Miller and Rupp, but, pursuant to the court's instructions that a single verdict must be returned against all defendants found to be negligent, it then rendered one verdict of $22,500. Thereafter the court ordered a remittitur to $14,000, or in the alternative a new trial; and upon plaintiff's acceptance of the reduction, judgment for $14,000 and costs was entered against all the defendants. The Bus Lines has not appealed. The other defendants strenuously contest a result which holds them to the same degree of responsibility as the Bus Lines, notwithstanding the jury's original differentiation among them and their own belief in their lack of any negligence. We think, how-

ever, that their real grievance is more against our present law of negligence than the conduct of this particular litigation.

The accident occurred a few miles north of Trenton on the main highway between New York and Philadelphia. A heavy snow was falling, visibility was poor, and snow, ice, and slush had collected on the roadway. The highway itself consisted of four concrete lanes each 12 feet in width, with the two southbound lanes separated from those northbound by a center island bordered by a sloping concrete curb 6 or 8 inches high. The accident occurred near an intersection of a crossroad with the highway where a bright light was suspended overhead. For a space of 50 feet on either side of the intersection the lanes were widened by the addition of a half lane of concrete 5 feet wide. At the time of the accident the vehicles were proceeding south in the southbound lane. The accident occurred just after they passed a station wagon then parked on the edge of the highway immediately north of the intersection.

Plaintiff's own observation of the accident itself was rather limited, and he relied particularly on the testimony of defendant Rupp, his first witness, supported by the testimony of a passenger and of the driver of the parked station wagon. These witnesses established that Rupp, driving his truck and trailer, turned out to, and did, pass the parked station wagon, then returned to the outer lane, and was struck by the bus about 150 feet south of the intersection, also that the bus, coming along rapidly in back of him, swung so far to the left that it struck the concrete curb of the island south of the intersection and then bounced over to hit the left rear of the trailer. On this testimony the showing of negligence as to Rupp was meager; it seems to rest only upon the statement of Mannion, the passenger, that "the trailer pulled out into the path of the bus," which, in turn, is offset by the evidence that by the time of the impact Rupp had passed the station wagon and returned to his own lane some distance south of the intersection.

■ When plaintiff rested, all three defendants separately made motions to dismiss; these the judge summarily denied, declining to hear arguments. Then the Bus Lines presented its case, consisting chiefly of the evidence of its driver, supported by certain of the passengers. The bus driver testified that Rupp had turned suddenly into his path after accepting his signal for a clear road to pass; this exchange of signals, pursuant to "a code used on the highway by bus and truck drivers," was effected by "a high beam" from his own spotlight answered by a blinking from Rupp's rear lights. Although his testimony contained inconsistencies, as with reference to the place of the accident, which naturally he attempted to pull to the north of the location shown by plaintiff, yet it seems clear that it made a jury issue, particularly as it was partially corroborated, at least as to the sharpness of Rupp's turn into his path, by the evidence of some of the passengers. Counsel for each of the appellants cross-examined these witnesses extensively, though they themselves introduced no evidence on behalf of their clients. All the parties then rested, and each defendant made a motion for a directed verdict, all of which were denied. After the case was submitted to the jury they returned for instructions as to separate awards as to Miller and Rupp and as to whether or not Rupp had testified as to receiving and acknowledging the signal from the bus (he had not); and thereafter they returned with the divided verdicts which, as we have seen, the court refused to accept. After the final single verdict was rendered, the court denied all motions to set it aside, except for the one issue of excessive damages which led to the reduction of the award as previously stated.

■ We find no error in these various steps. That plaintiff chose originally not to make claim against these defendants became immaterial when he amended his complaint, as provided in Rule 14, to charge them with negligence. It is true that, as we have recently held, he is given the option, under the rather illusory New York law of contribution among joint tortfeasors, to decide whether or not to take a joint judgment, which is the only basis upon which contribution can be had; and if he declines to accept as defendants those who have been cited in by his original adversary, the parties so impleaded must be dismissed. Brown v. Cranston, 2 Cir., Dec. 3, 1942, 132 F.2d 631. But here, unfortunately for appellants, plaintiff did accept the tender of additional parties; and the case is the same as if he had joined them originally. Nor is it now important to determine whether there was evidence sufficient to charge these defendants when they moved to dismiss at the close of plaintiff's case, for the case now should be determined

upon a survey of the whole evidence, which, as Wigmore says, "naturally renders any prior error immaterial." 9 Wigmore on Evidence, 3d Ed. 1940, § 2496, citing cases; Columbia & P. S. R. Co. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405; Brown v. Carver, 2 Cir., 45 F.2d 673.

■■ It is true that this rule, so universally followed, is usually stated in terms of waiver by a defendant who goes ahead to introduce his evidence. So it has been held not to apply where defendant introduced no evidence without formally resting, Kinnear Mfg. Co. v. Carlisle, 6 Cir., 152 F. 933, or where the further evidence is inconsequential. Lancaster v. Foster, 5 Cir., 260 F. 5, certiorari denied 249 U.S. 601, 39 S.Ct. 259, 63 L.Ed. 796. Such limitation upon the rule apparently would not apply where a defendant has participated to the extent of cross-examining witnesses. Bopp v. New York Elec. Vehicle Transp. Co., 177 N.Y. 33, 69 N.E. 122; Hoffman v. Brooklyn, Q. C. & S. R. Co., 78 Misc. 507, 138 N.Y.S. 577. Moreover, as Wigmore properly points out, op. cit., the true basis of the rule is not waiver, but "it is rather a necessary consequence of the discretionary nature and limited scope of the first ruling." This is borne out by the common-law principles dealing with the allied question of the power of the court to direct a verdict or submit the case to a jury on behalf of one defendant before its conclusion against other defendants. Such power is said to lie in the sound discretion of the court, a discretion which should be exercised with great care and only where the remaining defendants will not be harmed. Further, the discretion should be regulated not merely by a lack of evidence at the close of plaintiff's case, but by the probabilities whether such evidence will arise before the whole evidence is in; there would be "so palpable a failure of justice, where the evidence for the defence discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place, but where there is the strongest reason to believe that such a consequence cannot follow." Lord Denman, C. J., in Sowell v. Champion, 6 A. & E., K. B., 407, 415, quoted with approval in Castle v. Bullard, 23 How. 172, 185, 64 U.S. 172, 185, 16 L.Ed. 424, 428, and in Capital Traction Co. v. Vawter, 37 App.D.C. 29, 33, Ann.Cas.1912D, 1059, with note citing cases at 1061; Gulf & S. I. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168. No reason appears why the same principles should not govern under Rule 20(b), providing for separate trials as to joined defendants "to prevent delay or prejudice," or Rule 21, providing that any claim against a party "may be severed and proceeded with separately." See, also, Rules 41(b) and 50(a).

■ Hence we perceive no error in the action of the court in submitting the case to the jury against all the defendants. Nor do the jury's actions in first trying to apportion the damages among the defendants and then, under the court's instructions, compounding the two sums to a single amount show passion or prejudice upon its part. Indeed, the result seems a natural, if not a necessary, one. The most that can be said for the first verdict is that the jury thought the defendants here only about a third as negligent as the bus driver. But nevertheless, the jury did think them negligent; and hence in the present stage of our law, and in the absence of statutory change, they must be held liable for the full amount of the damage, irrespective of the degree of their fault. See cases collected in Carlton v. Boudar, 118 Va. 521, 88 S.E. 174, 4 A.L.R. 1480, and in annotations in 16 A.L.R. 465 and 62 A.L.R. 1425; Gregory, Legislative Loss Distribution in Negligence Actions, 1936, 4, 42, 49, 67-71, and Loss Distribution by Comparative Negligence, 21 Minn.L.Rev. 1; also 54 Harv.L. Rev. 1156, 1177.

Affirmed.