786 F.2d 1068
 Shirley PERRINE, Individually and as Administratrix of the
Estate of Jack D. Perrine, et al., Plaintiffs,
v.
Kenneth D. FREDERICKS, Defendant-Cross-Claim Plaintiff,
Rowley Interstate Transportation Co., a Corp.,
Defendant-Cross-Claim Plaintiff-Appellant, Archie Edward
Lee, Defendant-Cross-Claim Defendant-Appellee, Belford
Trucking Co., Inc., Defendant-Cross-Claim Defendant-Appellee.
 No. 85-8505.
 United States Court of Appeals,
Eleventh Circuit.
 April 14, 1986.
 
 Robert A.B. Reichert, Macon, Ga., for plaintiffs-appellants.
 Michael T. Thornton, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before GODBOLD, Chief Judge, VANCE, Circuit Judge, and THOMAS*, Senior District Judge.
 VANCE, Circuit Judge:
 
 
 1
 This appeal involves a dispute between two pairs of defendants in a wrongful death action arising out of a truck collision. One pair of defendants was dismissed at the close of the plaintiffs' case. The other pair appeals the dismissal. We affirm.
 
 I.
 
 2
 Appellee Archie Lee was operating a tractor trailer rig as an employee of appellee Belford Trucking Co. ("Belford"). While traveling southbound on Interstate 75 near Perry, Georgia, Lee's tractor suffered a mechanical problem. Lee pulled the rig into the emergency lane, turned on his emergency lights, put out at least one reflector to warn approaching motorists, and went for help.
 
 
 3
 A short time later, appellant Fredericks came along. Fredericks was also driving south, carrying a load for appellant Rowley Interstate Transportation Co. ("Rowley"). Fredericks' rig collided with Lee's and came to rest across both southbound lanes of traffic on the interstate.
 
 
 4
 The accident which gave rise to this suit occurred when a third rig arrived at the scene and crashed directly through Fredericks' unit. The driver, Jack Perrine, was apparently killed on impact. Perrine's family brought suit against Fredericks, Lee and their respective employers, and a cross-claim for indemnity or contribution was filed by Fredericks and Rowley against Lee and Belford.
 
 
 5
 The case proceeded to trial. At the close of the plaintiffs' case, however, the district court entered a directed verdict in favor of Lee and Belford. The court concluded that the evidence was insufficient to raise a jury question as to whether Lee's rig had been protruding into the roadway. Instead, the court found, the evidence overwhelmingly indicated that Lee had legally parked his unit in the emergency lane and thus had not been negligent.
 
 II.
 
 6
 The only evidence tending to prove that Lee's rig was protruding into the roadway was the testimony of Fredericks. On examination by the plaintiffs, Fredericks stated that he "appeared to see" Lee's trailer "sitting partially on the lane."
 
 
 7
 Fredericks' veracity was clearly in question. He had not mentioned anything about the location of Lee's rig to police while still at the scene of the collision. More important, State Trooper Odom, who investigated the collision, testified that Lee had originally admitted falling asleep at the wheel. Although Fredericks denied making this statement at trial, he did admit to driving significantly longer without eight hours' rest than is permitted by federal regulations. He also admitted falsifying his log entries to conceal this fact.
 
 
 8
 Fredericks' contention as to the location of Lee's rig was countered by two other witnesses and by physical evidence. Trooper Odom testified that in his opinion the rig was legally parked in the emergency lane. There was insufficient physical evidence, Odom concluded, to support Fredericks' claim that the rig was partially on the road. In fact, the physical evidence, including an accumulation of debris near the midpoint of the emergency lane, and the fact that the lane was easily large enough to accommodate the rig, supported the contrary conclusion. An accident reconstruction expert employed by the plaintiffs testified that although he could not determine whether the rig was entirely off the road, he had no reason to doubt Trooper Odom's conclusion. The expert also testified that it was his opinion, based on photographs and physical evidence, including tire marks, that Fredericks' unit had veered off the road--even off the emergency lane and into the grass--shortly before the collision. Neither the reconstruction expert nor Trooper Odom had any interest in the outcome of the case as between the defendants.
 
 
 9
 In ruling on appellee's motion for a directed verdict, the court stated:
 
 
 10
 I've listened very carefully to the evidence because of a concern over what evidence there was as to the parked vehicle. There's a difference in perceiving something to be in a certain place and saying it was there. In my best judgment, Mr. Fredericks did not testify that he saw the parked vehicle out in the road. If he did, I suggest to you that there is a firm rule of law that physical facts govern over personal opinion. The physical facts in this case, the debris, the pictures of the ruts [off the side of the road], in this Court's opinion, demand a finding ... that the second vehicle that came along went off of the right-hand side of the interstate highway ... into the dirt before coming back up onto the emergency lane and striking the parked vehicle. The position of the parked vehicle, according to all the physical evidence, was clearly, totally on the emergency lane. I don't think the Jury would be authorized, looking at the evidence in the light most favorable to the parties opposing the Motion, to find otherwise.
 
 
 11
 We agree. We repeat that the only evidence indicating that Lee's rig was not completely off the road was a single ambiguous statement by Fredericks, who, of course, had a strong motive to testify as he did, and whose testimony was directly called into question by a disinterested witness, the state trooper. Considered in the context of the totality of the evidence, Fredericks' testimony is not evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could have found Lee negligent. See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc). Since the facts and inferences point so strongly in favor of the appellees that a reasonable jury could not have arrived at a contrary verdict, the directed verdict in favor of Lee and Belford was proper. Id.
 
 III.
 
 12
 Appellants suggest that even if the evidence presented by the plaintiffs was insufficient to create a jury question as to whether Lee was negligent, the directed verdict was nevertheless improper because of the adversarial relationship between the defendants. They argue that they never had a chance to prove Lee responsible before he and Belford were dismissed from the case. In a case where codefendants are at odds, they contend, a judge should direct a verdict for less than all the defendants only when the other codefendants have had a chance to present evidence and it is clear they will not be prejudiced. See Bates v. Miller, 133 F.2d 645, 648 (2d Cir.), cert. denied, 320 U.S. 210, 63 S.Ct. 1446, 87 L.Ed. 1848 (1943).
 
 
 13
 Assuming appellants' contention to be correct as a general proposition, no harm was done by the judge's decision to grant the motion for directed verdict in this case. In the presentation of their defense against plaintiffs' claim appellants had the opportunity to fully advance their contention that it was Lee's negligence that proximately caused or contributed to the accident. They concede in this court that they have no additional evidence concerning Lee which they did not have an opportunity to present. We have considered the totality of the evidence in our conclusion that a directed verdict in favor of Lee and Belford was proper under the Boeing Co. v. Shipman standard. Under these circumstances the district court's decision to direct a verdict at the close of the plaintiffs' case was, at worst, harmless error.[1]
 
 
 14
 AFFIRMED.
 
 
 
 *
 Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Appellants also suggest that the premature dismissal of appellees means that the district court's judgment cannot be res judicata as between the defendants. Anything we could say about this issue would be dictum. Only the court in a future case can determine the res judicata value of the judgment here